# IN THE SUPREME COURT OF IOWA

No. 22–1010

Submitted February 20, 2023—Filed May 5, 2023

**CORY BURNETT,**

> Appellant,

vs.

**PHILLIP SMITH** and **STATE OF IOWA,**

> Appellees.

---

Appeal from the Iowa District Court for Johnson County, Lars G. Anderson, Judge.

A commercial truck driver who alleges that he was wrongfully arrested by an officer of the Iowa Department of Transportation appeals the summary judgment granted to the defendants in his action for damages under the Iowa Constitution. **AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined. Christensen, C.J., filed a concurring opinion.

Martin Diaz (argued), Swisher, for appellant.

Brenna Bird, Attorney General, Jeffrey S. Thompson, Solicitor General (until withdrawal), and Tessa M. Register (argued) and B.J. Terrones, Assistant Attorneys General, for appellees.

Elizabeth J. Craig, Iowa City, for amicus curiae Iowa League of Cities.

**MANSFIELD, Justice.**

### I. Introduction.

Under Iowa law, a person commits interference with official acts when the person knowingly resists or obstructs a peace officer in the performance of their lawful duties. Iowa Code § 719.1(1)(*a*) (2019). But resistance and obstruction are not the same as a passive refusal to render assistance.

A garbage truck driver was pulled over on a busy highway by an officer of the Iowa Department of Transportation (IDOT) for a cracked windshield. The IDOT officer decided to do a vehicle inspection and asked the driver to help him by remaining in the cab and turning the vehicle lights on and off. The driver offered up his keys and access to his vehicle but declined to assist, stating that he preferred to "go to jail" rather than help with the inspection. After several minutes of a verbal standoff, the driver got his wish. He was arrested and charged with interference with official acts.

After the driver was acquitted of the charge, he sued the IDOT officer and the State of Iowa. The driver pursued various legal theories of direct damages liability under the Iowa Constitution. The district court granted summary judgment to the defendants, and the driver appealed. On appeal, the driver urges that his passive noncooperation did not give the IDOT officer probable cause to arrest him for interference with official acts. The driver asks us to endorse his constitutional tort claim under article I, section 8 of the Iowa Constitution and *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017). The defendants counter with

various arguments, including a forceful statement that *Godfrey* was wrongly decided and should be overruled.

After careful consideration, we conclude that *Godfrey* should be overruled. *Godfrey* is not supported by constitutional text or history. There was no opinion in *Godfrey* joined in full by a majority of the court; its actual holding is contained in an opinion by one justice concurring in part and dissenting in part. *Godfrey* has been difficult to apply because our court has had to spin out new rules of law to accommodate these new types of claims. And *Godfrey* has undermined the established allocation of responsibility between the legislative and the judicial branches of government. Accordingly, we have decided to overrule *Godfrey* and to restore the law as it existed in this state before 2017. For these reasons, we affirm the judgment of the district court.

## II. Facts and Procedural History.

On November 1, 2019, at around 11:06 a.m., Cory Burnett was driving a garbage truck owned by his employer, Waste Management, southbound on Highway 218 near Iowa City. Philip Smith, a motor vehicle enforcement officer with IDOT, stopped the truck for what appeared to be a cracked windshield. The truck did in fact have a large crack on its windshield.

The encounter between Officer Smith and Burnett is captured on video and audio. As Officer Smith was pulling over the garbage truck, he can be heard stating that he was going to conduct an inspection.

Once both vehicles were stopped by the side of the highway, Officer Smith approached the driver side of Burnett's truck and advised Burnett that he would

be conducting a vehicle inspection. He asked Burnett to turn his lights on.[1] Burnett told Officer Smith that Smith could conduct his own inspection and that he was giving him access to the vehicle. Officer Smith explained that he needed Burnett to turn his lights on so he could go around the vehicle and check them. Clearly annoyed by the situation, Burnett refused.

Officer Smith asked Burnett again if he would turn his lights on. Burnett reiterated to Officer Smith that Smith could conduct his own inspection. Burnett said he was going to call his own boss and tell him he was going to jail. Burnett told Officer Smith he was "fucking crazy" and asked him why he wouldn't just give him a ticket for the windshield and let him go. Officer Smith said he wasn't going to give him a ticket for the windshield. Burnett said he was not going to keep playing these games. He said, "I'm fine with going to jail, I really am."

Burnett provided his commercial driver's license to Officer Smith, who communicated this information to dispatch. Officer Smith then asked again, "Are you going to do the inspection or not?" Burnett said he would go to jail. Officer Smith told Burnett if he didn't do the inspection, he was going to take him to jail. After Burnett again informed Officer Smith that he would go to jail, Officer Smith told him to put his hands behind his back and handcuffed him. Burnett asked what he was going to jail for, and Officer Smith replied, "Interference."

Officer Smith led Burnett back to his patrol car and asked Burnett to get in the front passenger seat. Burnett said he wanted to ride in the back. Officer

---

[1]The headlamps, taillamps, brake lights, and turn signals are required components of the level 2 vehicle inspection that Officer Smith intended to perform.

Smith replied that he had stuff in the back and Burnett should sit in the front. At this point, Burnett raised his voice and said, "I want to be in the back like all common decent criminals. I'm a criminal now, you've made me a criminal." Officer Smith replied, "Nobody says you're a criminal." Burnett continued heatedly, "I'm being locked up because I'm not following your orders. So I'm a criminal. . . . This is not a consensual act." Eventually Burnett agreed to sit in front. Once in the patrol car, he asked, "Is it too late to change my mind?" Officer Smith responded, "Once the cuffs are on, it's too late."

Burnett was arrested and charged with interference with official acts in violation of Iowa Code section 719.1. Following a trial, a magistrate dismissed the charge against Burnett on January 10, 2020.

After exhausting remedies with the state appeal board, Burnett sued Officer Smith and the State of Iowa in the Johnson County District Court on November 19. He asserted both common law claims and claims under article I, section 1 (violation of inalienable rights), section 8 (unreasonable search and seizure), and section 9 (violation of substantive and procedural due process) of the Iowa Constitution. Burnett's essential point was that his arrest had been without legal or factual support. Burnett conceded that he "had refused to assist in an inspection," but he asserted that he had a legal right to do so. Burnett emphasized that he never objected to the inspection or interfered with the ability of anyone else to do it; he just refused to participate in it himself.

On February 23, 2022, the State moved for summary judgment on all claims. With respect to article I, section 1, the State urged that the inalienable

rights clause does not contain enforceable self-executing commands. Concerning article I, section 8, the State urged that Officer Smith exercised all due care before arresting Burnett and was therefore entitled to immunity under *Baldwin v. City of Estherville* (*Baldwin I*), 915 N.W.2d 259, 260–61 (Iowa 2018). As to article I, section 9, the State maintained that no violation of either procedural or substantive due process had occurred. Further, the State asked that *Godfrey* be overruled. Additionally, the State argued that the recently-enacted immunity in Iowa Code section 669.14A barred all claims. The State also asked that Burnett's punitive damages claim be dismissed even if some of his claims otherwise withstood summary judgment. The State's submission included the video and audio of Officer Smith's stop and arrest of Burnett.

Burnett cross-moved for partial summary judgment on liability for his claims under article I, section 1 and article I, section 8. Burnett argued that Officer Smith's unlawful arrest violated both section 1—as an "arbitrary restraint"—and section 8—as an "unreasonable seizure." Burnett also argued that the magistrate's dismissal of the interference-with-official-acts charge was entitled to preclusive effect in his civil suit.

After resistances were filed, the district court issued a written ruling granting the State's motion and denying Burnett's cross-motion. With respect to Burnett's constitutional claims, the district court agreed with the State that article I, section 1 was not a self-executing source of rights that could be enforced through damages; that Burnett's section 8 claim failed because Officer Smith

had exercised all due care; and that no violation of section 9 had taken place. Specifically, the district court reasoned as follows concerning the section 8 claim:

> The cracked windshield on Plaintiff's work vehicle provided a basis for Defendant Smith to pull the vehicle over. The video of the incident does not show any action by Defendant Smith that could be construed as showing he acted in bad faith or with malice and lack of probable cause in conducting the investigation into the vehicle.

The court also found that the undisputed facts, as a matter of law, could not sustain an award of punitive damages and that Iowa Code section 669.14A did not apply retroactively to conduct that preceded its effective date. However, the court added that "because the Court is not leaving any of Plaintiff's claims for trial, it does not find it necessary to apply § 669.14A in this case."

Burnett filed a motion for reconsideration, which the district court denied. Burnett then filed a timely appeal, and we retained his appeal.

**III. Standard of Review.**

We review motions for summary judgment for correction of errors at law. *Lennette v. State*, 975 N.W.2d 380, 388 (Iowa 2022). "To the extent that we review constitutional claims, the standard of review is de novo." *Venckus v. City of Iowa City*, 930 N.W.2d 792, 798 (Iowa 2019).

**IV. Legal Analysis.**

Burnett's appeal is limited to article I, section 8 of the Iowa Constitution.[2] Several issues are raised by the parties. First, may a constitutional tort claim be pursued under article I, section 8? In other words, does our *Godfrey decision*

---

[2]Burnett does not appeal the dismissal of his claims under article I, section 1 and article I, section 9.

apply to claims under article I, section 8? Second, if it does, should *Godfrey* nonetheless be overruled? Third, if a *Godfrey* claim may be pursued under article I, section 8, is one nonetheless barred here because Officer Smith's arrest of Burnett was lawful? In other words, was there probable cause to believe that Burnett had committed interference with official acts in violation of Iowa Code section 719.1? Fourth, are the defendants precluded from asserting the existence of probable cause because the case against Burnett was dismissed? Fifth, is Burnett's constitutional tort claim under article I, section 8 barred by section 669.14(4) of the Iowa Tort Claims Act (ITCA), which excepts claims "arising out of . . . false arrest"? Sixth and finally, is that claim foreclosed by the "all due care" immunity we recognized in *Baldwin I*?

For the reasons that follow, we have decided to address only the second issue and to overrule *Godfrey*.

**A. The *Godfrey* Decision.** Six years ago, in *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), our court held for the first time that state officials could be sued directly under the Bill of Rights of the Iowa Constitution for money damages. *Id.* at 870–72. No legislation was required; the courts could—and in the following six years did—try to fill in the details of this court-devised remedy.

Godfrey, a workers' compensation commissioner, claimed the Governor and other state officials had discriminated against him and reduced his salary based on his sexual orientation and partisan politics. *Id.* at 845–46. He asserted claims under the Iowa Civil Rights Act (ICRA) as well as equal protection and due process claims under article I, section 6 and article I, section 9 of the Iowa

Constitution. *Id.* at 846. The district court had dismissed the constitutional claims as legally invalid, and we granted interlocutory review. *Id.* at 846–47.

On appeal, we reversed the dismissal of the constitutional damage claims in part. *Id.* at 880. The legal analysis in the lead opinion was extensive. *See id.* at 851–80. The lead opinion first traced the history of direct damages claims under the Federal Bill of Rights. *Id.* at 851–56. We noted that the United States Supreme Court recognized such claims in three cases decided between 1971 and 1980: *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). *Godfrey*, 898 N.W.2d at 854. We acknowledged that the Court had "show[n] an unwillingness" since then to expand such claims beyond the circumstances and contexts of those three cases. *Id.* at 855–56.

We then turned to whether other states have recognized such claims. *Id.* at 856–62. We characterized state courts as "nearly equally divided in whether to recognize implied constitutional actions for damages or whether to decline to recognize such actions." *Id.* at 856–57 (footnote omitted).[3]

---

[3]To be precise, *Godfrey* identified fourteen jurisdictions as recognizing direct damages actions under their state constitutions: California, Connecticut, Illinois, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Montana, New Jersey, New York, North Carolina, Texas, and Wisconsin. 898 N.W.2d at 856 n.2. Likewise, it identified fourteen jurisdictions as not recognizing such claims: Alaska, Colorado, Florida, Georgia, Hawaii, Kentucky, Missouri, New Hampshire, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, and Utah. *Id.* at 857 n.3.

Of the jurisdictions in the former category, Massachusetts and New Jersey actually have laws authorizing state constitutional claims. *See* Mass. Gen. Laws ch. 12, § 11I (2019); N.J. Stat. § 10:6-2(c) (2019). New York has—by statute—waived sovereign immunity for constitutional tort claims. *See Brown v. State*, 674 N.E.2d 1129, 1134–36 (N.Y. 1996). California and Texas used to—but no longer—recognize direct constitutional claims for damages. *See Baldwin I*, 915 N.W.2d at 272–73.

Next we addressed Iowa caselaw. *Id.* at 862–64. We discussed three Iowa cases as supporting a direct action for damages under article I, section 8 of the Iowa Constitution: *McClurg v. Brenton*, 98 N.W. 881 (Iowa 1904); *Krehbiel v. Henkle*, 121 N.W. 378 (Iowa 1909); and *Girard v. Anderson*, 257 N.W. 400 (Iowa 1934). *Godfrey*, 898 N.W.2d at 862–63. All involved unlawful entries into homes to retrieve property allegedly belonging to someone other than the homeowner. *McClurg*, 98 N.W. at 881–82; *Krehbiel*, 121 N.W. at 379–80; *Girard*, 257 N.W. at 400–01. Two of the cases referenced the Iowa Constitution. *See Krehbiel*, 121 N.W. at 379–80 ("The right of the citizen to security in person and property against wrongful seizures and searches is one which the law has ever zealously safeguarded and has express recognition in our state Constitution. That a violation of this right without reasonable ground therefor gives the injured party a right of action is thoroughly well settled." (citation omitted)); *Girard*, 257 N.W. at 403 ("A violation of the state and federal constitutional provisions against the unreasonable invasion of a person's home gives the injured party a right of action for damages for unlawful breaking and entering.").

We acknowledged that in *Van Baale v. City of Des Moines*, 550 N.W.2d 153 (Iowa 1996), our court had rejected a direct constitutional claim for damages, stating, "Equal protection rights may be enforced only if the Congress or a legislature provides a means of redress through appropriate legislation." *Godfrey*, 898 N.W.2d at 850 (quoting *Van Baale*, 550 N.W.2d at 157). We characterized these statements as dicta because our court had held in the alternative that the

plaintiff had not stated a claim for violation of equal protection. *See id.* at 864. We also criticized the reasoning and research in *Van Baale. See id.*

In addition, we invoked Iowa's constitutional tradition. *Id.* at 864–68. In this section of the opinion, we quoted two statements from the 1857 debates on our constitution about the importance of the bill of rights. *Id.* at 864. We further discussed some English cases from the eighteenth century awarding damages to individuals who had suffered unlawful searches and seizures. *Id.* at 866–67. From this we concluded, "The availability of damages at law is thus an ordinary remedy for violation of constitutional provisions, not some new-fangled innovation." *Id.* at 868.

At this point, we directed attention to the second sentence of article XII, section 1, which states, "The general assembly shall pass all laws necessary to carry this constitution into effect." *Id.* (quoting Iowa Const. art XII, § 1). The *Godfrey* defendants had argued that this provision meant *the general assembly* must enact any damages remedy deemed necessary to implement the Iowa Constitution; it was not the courts' role to do that for them. *Id.* We disagreed. *Id.* at 869. We concluded that the second sentence of article XII, section 1, and article XII generally, were dealing with the "transition" to the 1857 Constitution. *Id.* at 868. We noted that article XII was entitled, "Schedule." *Id.* We therefore questioned its significance:

> It would be a remarkable development to allow a provision in the schedule article of the Iowa Constitution to eviscerate the power of courts to provide remedies for violations of the people's rights established in article I, the article which the framers plainly thought,

bar none, contained the most important provisions in the Iowa Constitution.

*Id.* at 870.

Finally, we concluded that the language of the equal protection and due process guarantees in article I, section 6 and article I, section 9 were "self-executing" by their terms. *Id.* at 871–72. In fact, we identified only two *non*-self-executing provisions in our bill of rights: article I, section 9, which provides that the general assembly "may" authorize a jury of less than twelve persons in inferior courts, and article I, section 11, which provides that the general assembly "may" dispense with grand juries. *Id.* at 869. "[O]ther than these two provisions, nothing in the Iowa Bill of Rights requires legislative action to ensure enforcement." *Id.* We also noted that at various points, our constitution specifically instructs the general assembly to enact laws in certain areas. *Id.* at 869 n.5. This, in our view, implied that legislation was not needed to establish a constitutional damages remedy. *Id.* at 869.

*Godfrey* was not a unanimous decision. *See id.* at 880. Chief Justice Cady, who provided the key fourth vote, joined the lead opinion only in part. *Id.* at 880 (Cady, C.J., concurring in part and dissenting in part). He stated, "I concur in the opinion of the court to the extent it would recognize a tort claim under the Iowa Constitution when the legislature has not provided an adequate remedy." *Id.* He then went on to explain why the plaintiff had an adequate remedy as to his article I, section 6 equal protection claim under the ICRA but not as to his article I, section 9 due process claim. *Id.* at 880–81.

Three members of the court dissented from the lead opinion in its entirety. *See id.* at 899 (Mansfield, J., dissenting). Their dissent took the position that article XII, section 1 "forecloses the plaintiff's argument and should be the starting-point for analysis." *Id.* 882. The dissent pointed to the overall text of section 1:

> This Constitution shall be the supreme law of the state, and any law inconsistent therewith, shall be void. The general assembly shall pass all laws necessary to carry this Constitution into effect.

*Id.* at 882 (emphasis omitted) (quoting Iowa Const. art. XII, § 1). The dissent elaborated,

> Article XII, section 1 stands for two propositions. First, in the event of a conflict between a law and the constitution, the constitution wins. Second, the constitution is implemented through laws passed by the general assembly.
>
> To put it another way, the constitution has both negative and positive force. On the negative side, the constitution is a brake that invalidates contrary laws. On the positive side, the constitution empowers the general assembly to enact any laws needed to achieve its purposes.

*Id.* at 883.

The dissent also noted that Rhode Island has the same constitutional provision as article XII, section 1 and that the Rhode Island Supreme Court has read it as precluding constitutional damages claims without legislative authorization. *Id.* at 884; *see Bandoni v. State*, 715 A.2d 580, 595 (R.I. 1998) (stating that "we are of the opinion that the creation of a remedy in the circumstances presented by this case should be left to the body charged by our Constitution with this responsibility" and quoting article 6, section 1 of the

Rhode Island Constitution, which provides that "[t]he general assembly shall pass all laws necessary to carry this Constitution into effect").

The dissent urged that the lead opinion had drawn the wrong lesson from the other specific references to law-making in the constitution. *Id.* at 886. These typically "specify subject areas where the legislature *must* pass laws, such as the election of an attorney general and the organization of corporations" or "delineate areas where the legislature has greater discretion than usual." *Id.* "Yet, in addition, and at the same time, the legislature is exclusively vested with plenary authority to pass whatever other laws it deems 'necessary' to implement the Iowa Constitution." *Id.* (citing Iowa Const. art. XII, § 1).

Regarding the lead opinion's contention that the Iowa Constitution is "self-executing," the dissent distinguished "self-executing" in the sense of being enforceable as a defense or negative check on the government from "self-executing" in the sense of being an independent ground for bringing a damages action without legislative authorization. *Id.* at 885–86, 896–97. Our cases had never said the constitution was self-executing in the *latter* sense. *Id.* at 896. And several cases had said it was not. *See Van Baale,* 550 N.W.2d at 157 ("Although the equal protection clause creates a constitutionally protected right, it is not self-enforcing."); *Hoover v. Iowa State Highway Comm'n*, 222 N.W. 438, 440 (Iowa 1928) ("Clearly the power of the courts to restrain state officials from violating plain provisions of the statute and Constitution is in no way derogatory to the general and well-recognized rule that the state cannot be sued without its consent."); *Lough v. City of Estherville*, 98 N.W. 308, 310 (Iowa 1904) ("While a

violation of the Constitution in the respect in question is to be condemned, and the courts should interfere to prevent such violation whenever called upon so to do, yet we are not prepared to adopt the suggestion that an action for damages may be resorted to, as affording a proper means of redress, where a violation has been accomplished."); *Edmundson v. Indep. Sch. Dist.*, 67 N.W. 671, 673 (Iowa 1896) ("The constitutional provision is not self-executing or self-enforcing. It is purely a matter of defense to recovery upon a contract . . . .").

Turning to the 1857 constitutional debates, the dissent pointed to a proposal by one delegate that would have allowed the State to be sued in damages for taking away privileges and immunities it had previously granted. *Godfrey*, 898 N.W.2d at 885. This proposal drew vocal opposition and did not make it into the constitution. *Id.* As the dissent put it, "[T]he key point is this: these framers understood the State generally could not be sued, even on a constitutional claim, without express authorization from the constitution itself or from the general assembly." *Id.*

The dissent also maintained that the majority could cite no Iowa precedent for a lawsuit for damages under the Iowa Constitution being available "absent statutory authority or a common law tort." *Id.* at 886. *Godfrey* was the first of its kind. Of the three cases cited by the majority, *McClurg* was a common law trespass case against the mayor of Des Moines and others for engaging in vigilante justice and breaking into the plaintiff's home at night after the plaintiff had allegedly stolen chickens. *Id.* at 887; *see McClurg*, 98 N.W. at 881–83. *Krehbiel* and *Girard* were common law cases against *private parties. Godfrey*,

898 N.W.2d at 887–88; *see Krehbiel*, 121 N.W. at 379–80; *Girard*, 257 N.W. at 400–01. "[T]hese causes of action did not depend on the existence of article I, section 8, but were traditional common law claims and would have gone forward even if article I, section 8 were not part of our constitution." *Godfrey*, 898 N.W.2d at 888.

Further, the dissent noted that we had repeatedly rejected constitutional damages claims against the State—both before and after the passage of the ITCA—on the basis of sovereign immunity. *Id.* at 893, 896; *see, e.g., Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999); *Yoerg v. Iowa Dairy Indus. Comm'n*, 60 N.W.2d 566, 571 (Iowa 1953). Presumably *Godfrey* was overruling those cases, although without saying so.

**B. *Godfrey*'s Aftermath.** In the six years since *Godfrey*, we have tried to answer some of the new questions that our decision raised. These include whether qualified immunity is available and what the standard should be, *Baldwin I*, 915 N.W.2d at 279–81; whether judicial process immunity is available, *Venckus v. City of Iowa City*, 930 N.W.2d at 800–03; what statute of limitations applies to *Godfrey* claims against municipal defendants, *id.* at 808; whether punitive damages and attorney fees can be recovered on *Godfrey* claims against municipal defendants, *Baldwin v. City of Estherville* (*Baldwin II*), 929 N.W.2d 691, 698–700 (Iowa 2019); whether procedural provisions of the ITCA apply to *Godfrey* claims against the State and state employees, *Wagner v. State*, 952 N.W.2d 843, 858–59 (Iowa 2020); and whether punitive damages are available against state defendants, *id.* at 861–62. On almost all of these issues,

our court was divided. *See Wagner*, 952 N.W.2d at 865; *Venckus*, 930 N.W.2d at 810; *Baldwin II*, 929 N.W.2d at 702; *Baldwin I*, 915 N.W.2d at 281. And as this case illustrates, other questions continue to arise.

Additionally, our methodology for answering *Godfrey* questions has not been consistent. In *Baldwin II*, we deferred to the legislature and made a broad holding that punitive damages are not available on *Godfrey* claims against municipalities because the Iowa Municipal Tort Claims Act (IMTCA) prohibits such damages. 929 N.W.2d at 698–99. Later, in *Wagner*, after acknowledging that the ITCA also bars recovery of punitive damages, we said, "If we strictly followed *Baldwin II*, we could give Iowa Code section 669.4(2) the same conclusive effect that section 670.4(1)(*e*) received in *Baldwin II*." 952 N.W.2d at 861. Yet we declined to follow that approach. *Id.* at 862. Instead, we focused on the *Godfrey* partial concurrence and partial dissent in issuing a case-specific ruling that was limited to "an excessive force case without other unconstitutional conduct where any actual damages will likely be significant." *Id.*

Meanwhile, we have acknowledged as a court that *Godfrey* sharply departed from precedent. In *Wagner*, we observed, "[*Godfrey*] cited no Iowa precedent for a direct constitutional claim for damages against the State or state officials. In fact, Iowa precedent was to the contrary." *Id.* at 857; *see also id.* ("[T]here was no Iowa precedent allowing the State or its officials acting within the scope of their employment to be sued in damages for a constitutional tort.").

**C. Reasons for Overruling *Godfrey.*** The State advances several reasons why *Godfrey* should be overruled.[4] The State points to two developments that have occurred since *Godfrey.* First, while not overruling *Bivens, Davis,* or *Carlson,* the United States Supreme Court has expressed its disapproval of direct constitutional claims for damages under the United States Constitution. *See Egbert v. Boule,* 142 S. Ct. 1793, 1802–04 (2022). In *Egbert v. Boule,* which was decided last year and which involved a Fourth Amendment excessive force claim seemingly analogous to *Bivens,* the Court found that no constitutional tort claim was available. *Id.* at 1809. Throughout its opinion, the Court distanced itself from the trilogy of 1971–80 cases: "Over the past 42 years, . . . we have declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Id.* at 1799. "[O]ur cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts . . . ." *Id.* at 1800. "At bottom, creating a cause of action is a legislative endeavor." *Id.* at 1802. "[W]e have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Id.* at 1809.

Second, our legislature has registered its disagreement with *Godfrey.* During the 2021 legislative session, the legislature enacted amendments to the ITCA and the IMTCA that added a qualified-immunity defense and a heightened pleading standard for a plaintiff alleging a violation of law by a state or local

---

[4]The Iowa League of Cities has filed an amicus brief joining the State's request for *Godfrey* to be overruled.

official. *See* 2021 Iowa Acts ch. 183 §§ 12, 14 (codified at Iowa Code § 669.14A (2022); *id.* § 670.4A). The amendments also included the following language: "This chapter shall not be construed to be a waiver of sovereign immunity for a claim for money damages under the Constitution of the State of Iowa." *Id.* §§ 13, 15 (codified at Iowa Code § 669.26 (2022); *id.* § 670.14). Thus, the 2021 legislation asserted—at least symbolically—that the State and local governments were immune from *Godfrey* claims.

Neither of these developments is binding on us. Neither compels us to reexamine *Godfrey*. But they suggest that we should carefully consider whether we went down the right path in 2017.

After doing so, we conclude that *Godfrey* was wrongly decided. We respectfully believe that *Godfrey* misinterpreted the relevant constitutional text, misread Iowa precedent, and overlooked important constitutional history. *Godfrey* was the break with precedent; by overruling *Godfrey*, we simply conform our law to the way it was before 2017. Many of our disagreements with *Godfrey* were set forth in the prior dissent which we have already summarized. We add the following observations.

1. *Godfrey does not explain the second sentence of article XII, section 1.* *Godfrey*'s approach to the second sentence of article XII, section 1 was result-oriented, not text-oriented. We said in *Godfrey* what the sentence "cannot" do: specifically, it "cannot swallow up the power of the judicial branch to craft remedies for constitutional violations of article I." 898 N.W.2d at 869 (lead

opinion). But we never offered an alternative textual explanation for what the sentence *actually did.*

It does not make a difference if one characterizes article XII as relating to "transition issues." *Id.* at 868. Yes, article XII was intended in large part to manage the transition to the 1857 Constitution. *See* Iowa Const. art. XII, §§ 3–13. In that regard, sections 1 and 2 together make it clear that laws inconsistent with the constitution became void, pre-1857 laws consistent with the constitution remained in effect, but otherwise the legislature needed to pass laws to implement the new constitution. *Id.* §§ 1, 2. It was the legislature's job to pass "all laws necessary to carry this Constitution into effect," *id.* § 1, not ours "to craft remedies for constitutional violations," *Godfrey,* 898 N.W.2d at 869.

*Godfrey* also overlooked the contrasting language in article I, section 18 that contains a self-executing damages remedy: "Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury . . . ." Iowa Const. art. I, § 18. When the framers of the 1857 Constitution wanted to provide for a right to damages against the government, they knew how to do so. *See State v. Ochoa,* 792 N.W.2d 260, 269 (Iowa 2010) (applying the canon against surplusage in interpreting the Iowa Constitution).

2. *Common law claims against local law enforcement were widely recognized before and after the adoption of the 1857 Constitution, but these were not direct constitutional claims for damages. Godfrey* also missed another critical point: The common law tradition *permitted* common law claims against local law

enforcement officials for tortious actions taken in excess of their authority. Our early caselaw is full of examples. In *Hetfield v. Towsley*, 3 Greene 584 (Iowa 1852), the plaintiff sued a justice of the peace and others for wrongfully taking away his yoke of oxen. *Id.* at 584. We affirmed dismissal of the case under the circumstances and stated the general rule, "The justice and constable, in what they did, were in the performance of official duty. Unless they exceeded their jurisdiction, or acted corruptly, or without authority of law, they are not liable." *Id.* at 585. In *Hutchinson v. Sangster*, 4 Greene 340 (Iowa 1854), we reversed a jury verdict against the marshal of Iowa City who had been sued for trespass and false arrest after arresting and detaining an intoxicated individual. *Id.* at 341, 343. We reasoned that the answer pled "ample justification," and the marshal should have been allowed to present a defense. *Id.* at 342–43. In *Deforest v. Swan*, 4 Greene 357 (Iowa 1854), we affirmed a trespass judgment against the sheriff of Johnson County for actions taken in reliance on a "grossly deficient" writ of attachment. *Id.* at 357–58. In *Plummer v. Harbut*, 5 Iowa (Clarke) 308 (1857), we affirmed a trespass verdict in favor of an individual whose premises had been broken into and whose liquor had been seized by the defendant constable and others on the basis of an invalid search warrant. *Id.* at 314. In *Funk v. Israel*, 5 Iowa (Clarke) 438 (1858), we said, "[S]uppose the justice issues the warrant without any information, or the officer seizes without a warrant, or fails to give the required notice, or any other material defect is found in the proceedings, of course, the officer, and all parties who acted with him, would be liable in trespass." *Id.* at 449.

Notably, all of these actions alleged wrongful conduct by local law enforcement that would have violated article I, section 8. But nobody mentioned that because it wasn't the important point. The important point was that the defendants had allegedly engaged in tortious conduct without adequate justification. *See also Lennette*, 975 N.W.2d at 405 (McDonald, J., concurring) ("By the time the citizens of Iowa ratified the Iowa Constitution in 1857, it was well established throughout the country that government officials could be, and regularly were, subject to nonconstitutional causes of action for monetary damages.").

*McClurg*, *Krehbiel*, and *Girard* fit neatly into this pattern. They were not constitutional tort cases—i.e., *Godfrey* claims before their time. They were standard common law tort cases. In *McClurg*, the action was "for an alleged wrongful and unauthorized trespass upon plaintiff's home and property." 98 N.W. at 882. So there was no basis in our precedent to adopt a *constitutional* cause of action for money damages.[5] Similarly, in *Krehbiel*, we said that a violation of the right to security in person and property against wrongful seizures

---

[5]In *Godfrey*, we also cited *State v. Tonn*, 191 N.W. 530 (Iowa 1923), *abrogated by State v. Hagen*, 137 N.W.2d 895 (Iowa 1965). 898 N.W.2d at 862–63. *Tonn* is a case from a bygone era involving a prosecution of an organizer for the International Workers of the World (IWW) for what would now likely be regarding as protected First Amendment activity. *See id.* at 532. While the defendant was in jail, local law enforcement retrieved and searched his personal bags without having obtained a warrant. *Id.* The search revealed IWW books, pamphlets, letters, buttons, etc. *Id.* at 532–33. Although the search was illegal, we declined to apply the exclusionary rule under the Iowa Constitution. *Id.* at 535–36. Instead, we indicated that the defendant could pursue an action for damages against local law enforcement: "A trespassing officer is liable for all wrong done in an illegal search or seizure." *Id.* at 535. A dissent in part commented that "an action for damages against the individual committing the trespass is scarcely worthy of the court which refuses to give him the protection to which he is entitled under the charter which is supposed to command the obedience of the judiciary as well as of the private citizen." *Id.* at 540–41 (Weaver, J., concurring in part and dissenting in part). Again, the notion was simply that the victim of a wrongful search could pursue a *common law* trespass claim.

and searches "without reasonable ground therefor gives the injured party a right of action." 121 N.W. at 379–80. But the right of action in question was a common law claim; we cited as supporting authority a series of cases all involving common law claims. *See id.* at 380. And in *Girard*, the plaintiff brought a cause of action for "trespass," 257 N.W. at 401; we simply cited to the Iowa Constitution as a reason why the entry into the home was not lawful, *id.* at 402–03.

In this regard, one more case should be mentioned. In *Lough v. City of Estherville*, 98 N.W. 308, taxpayers sought to hold the mayor and city council legally liable because they had caused the city to incur indebtedness in excess of the constitutional limit. *Id.* at 308. This constitutional claim did not fit within the established common law framework. *See id.* at 309–10. And therefore we rejected it, stating,

> While a violation of the Constitution in the respect in question is to be condemned, and the courts should interfere to prevent such violation whenever called upon so to do, yet we are not prepared to adopt the suggestion that an action for damages may be resorted to, as affording a proper means of redress, where a violation has been accomplished.

*Id.* at 310.

3. *The sovereign immunity of the State from suit was an established rule when the 1857 Constitution was adopted and remained so until we adopted the ITCA. Godfrey* also failed to account for, or even discuss, sovereign immunity. Historically, in Iowa, the State could not be sued for damages without its consent. The 1857 debates show that the delegates recognized this sovereign immunity as a background principle. "[I]t is a well settled principle, that a citizen of this State cannot sue the State, for the State is sovereign, and cannot be sued

by its subject." 1 *The Debates of the Constitutional Convention of the State of Iowa* 410 (W. Blair Lord rep., 1857) (remarks of Clarke), https://www.legis.iowa.gov /docs/publications/ICNST/961927.pdf. Further:

> [T]he Supreme Court of the United States, has decided under the section of the Constitution of the United States, which that gentleman has read, that even citizens of another State cannot sue this State, unless the law of this State gives them the right so to do; for the simple and plain reason that a State is sovereign, and cannot be sued without her own consent.

*Id.*

And our court confirmed this rule many times before *Godfrey*. In *Iowa Electric Co. v. State Board of Control*, 266 N.W. 543 (Iowa 1936), we stated,

> The doctrine that a state cannot be sued in its sovereign capacity is so well settled that it requires neither discussion nor citation of authorities. The difficulty is in determining whether the things of which complaint is made in the petition were done by the appellants in their capacity as officers of and as an agency of the state, and under the authority possessed by them as such officers and agency.

*Id.* at 544. "It is fundamental that a state cannot be sued in its own courts without its consent . . . ." *Wilson v. La. Purchase Exposition Comm'n*, 110 N.W. 1045, 1046 (Iowa 1907). "Concededly, if the fair board be an arm or agency of the state, it is not suable." *De Votie v. Iowa State Fair Bd.*, 249 N.W. 429, 429 (Iowa 1933); *cf. Hatcher v. Dunn*, 71 N.W. 343, 344 (Iowa 1897) (holding that the liability of a state oil inspector and his deputy for malfeasance, if any, was only statutory). This did not mean the constitution could not be enforced against the State. In *Collins v. State Board of Social Welfare*, 81 N.W.2d 4 (Iowa 1957), for example, we held that the plaintiffs could pursue an action for a declaratory judgment that their state welfare payments were unconstitutionally

discriminatory in violation of article I, section 6 of the Iowa Constitution. *Id.* at 6–7. We said, "The rule is . . . well recognized that where no judgment or decree is asked against the State, but the suit is rather to require its officers and agents to perform their duty, there is no immunity recognized." *Id.* at 6; *see also State ex rel. Fenton v. Downing*, 155 N.W.2d 517, 520 (Iowa 1968) ("Where the purpose of the suit is to require the officers and agents of the State to perform their duties, there is no immunity recognized."). So we were not powerless before 2017 to enforce the constitution; we simply could not award damages "at law" against the State without a law empowering us to do so.

The doctrinal flaws in *Godfrey* might not be sufficient reason to overrule it if the case were filling a significant gap in our jurisprudence. Yet we are not persuaded that *Godfrey* has been serving that role.

4. *Several of the* Godfrey *claims that we have seen involved no underlying constitutional violation.* To some extent, *Godfrey* has been used to advance constitutional claims of questionable legal merit. That was true in *Godfrey* itself. There, we ultimately rejected the plaintiff's constitutional damages claim on the merits after ten years of litigation on the ground that he had no constitutionally protected interest in his salary which the Governor had reduced. *Godfrey v. State*, 962 N.W.2d 84, 117 (Iowa 2021). That ruling on this point was unanimous; it was joined even by our distinguished former colleague who had written the lead opinion in *Godfrey*. *See id.* at 90; *id.* at 124–26 (Appel, J., concurring in part and dissenting in part) (dissenting on other grounds); *id.* at 155 (McDermott, J., concurring in part and dissenting in part) (same).

Another example is *Lennette v. State*, 975 N.W.2d 380. There, we affirmed the dismissal of *Godfrey* constitutional damages claims brought by a father whose young daughter had wrongfully accused him of sexual abuse. *Id.* at 384–86. An Iowa Department of Human Services (DHS) social worker had credited the allegation. *Id.* at 385. At DHS's request, an order was entered ex parte removing the father from the home. *Id.* Months later, after the father moved to vacate the no-contact order and a full trial was held, "the juvenile court issued a detailed ruling determining that the sexual abuse allegation was 'unfounded and should be expunged from the central registry.' " *Id.* at 386. We held, again unanimously, that these circumstances did not amount to violation of substantive or procedural due process. *Id.* at 396–97.

Two earlier examples are *Behm v. City of Cedar Rapids*, 922 N.W.2d 524 (Iowa 2019), and *Weizberg v. City of Des Moines*, 923 N.W.2d 200 (Iowa 2018). In those two cases, various individuals who had received automated-traffic-enforcement (ATE) citations alleged that the citations were unlawful. 922 N.W.2d at 538–40; 923 N.W.2d at 207–08. They sought damages under the Iowa Constitution for violations of procedural due process, substantive due process, equal protection, and privileges and immunities. 922 N.W.2d at 539–40; 923 N.W.2d at 207–08.

In *Behm*, the plaintiffs made the novel assertion that the ATE ordinance infringed their fundamental right to intrastate travel. 922 N.W.2d at 548. We rejected this argument summarily: "No one . . . can seriously question the power of the state or a municipality to impose speed limits on public highways." *Id.* at

549. We then applied the rational basis test and affirmed summary judgment for the city on all the substantive constitutional claims. *Id.* at 550–59. We also affirmed summary judgment on the finding of no procedural due process violation. *Id.* at 569. Again, our ruling was unanimous.

In *Weizberg*, we likewise concluded that there had been no violation of procedural due process. 923 N.W.2d at 203. On the substantive due process, equal protection, and privileges and immunities claims, we held that the plaintiff's case could go forward but emphasized that "[t]he procedural distinction between *Behm* and this case is critical." *Id.* at 217, 219. We noted that *Behm* had been decided on summary judgment whereas *Weizberg* had been decided on a motion to dismiss. *Id.* at 217. We held that the plaintiffs should have had an opportunity to negate the asserted rational basis before the trial court dismissed the case. *Id.* at 217–19, 221–22.

Thus, it is unclear whether *Godfrey*, at a practical level, is really needed. Does it fill a remedial gap in our law? That is an important issue because we have already discussed *Godfrey*'s jurisprudential costs.

5. *Godfrey claims in federal court have usually been a companion to federal constitutional claims covering the same alleged misconduct.* In addition to state court cases like *Godfrey*, *Lennette*, *Behm*, and *Weizberg*, federal courts have been also presiding over cases involving *Godfrey* claims. *See, e.g., Luong v. House*, ___ F. Supp. 3d ___, No. 4:21–cv–00214, 2023 WL 2890196 (S.D. Iowa April 11, 2023); *Sahr v. City of Des Moines*, ___ F. Supp. 3d ___, No. 4:21–cv–00101, 2023 WL 2729436 (S.D. Iowa March 30, 2023); *Young v. City of Council Bluffs*,

569 F. Supp. 3d 885 (S.D. Iowa 2021); *Clinton v. Garrett*, 551 F. Supp. 3d 929 (S.D. Iowa 2021), *aff'd*, 49 F.4th 1132 (8th Cir. 2022); *Wagner v. Iowa*, No. 19–CV–3007–CJW–KEM, 2021 WL 521309 (N.D. Iowa Feb. 11, 2021); *Williams v. City of Burlington*, 516 F. Supp. 3d 851 (S.D. Iowa 2021); *Wendt v. Iowa*, No. 4:17–cv–00423–JEG–CFB, 2019 WL 13241967 (S.D. Iowa Sept. 23, 2019); *Baldwin v. Estherville*, 218 F. Supp. 3d 987 (N.D. Iowa 2016). Here, the issue is not so much that the underlying constitutional claim may lack merit, but that the *Godfrey* claim is duplicative.

Frequently, the federal cases have raised conventional false arrest, excessive force, and illegal search allegations. *See Luong*, ___ F. Supp. 3d at ___, 2023 WL 2890196, at *4 (false arrest); *Sahr*, ___ F. Supp. 3d at ___, 2023 WL 2729436, at *4 (false arrest); *Young*, 569 F. Supp. 3d at 903–04 (false arrest and excessive force); *Clinton*, 551 F. Supp. 3d at 939 (improper stop); *Wagner*, 2021 WL 521309, at *2 (excessive force); *Williams*, 516 F. Supp. 3d at 861 (excessive force); *Wendt*, 2019 WL 13241967, at *5 (illegal search); *Baldwin*, 218 F. Supp. 3d at 994 (false arrest). The *Godfrey* claim under the Iowa Constitution then is typically joined with a federal civil rights claim under 42 U.S.C. § 1983 and the United States Constitution. *See Luong*, ___ F. Supp. 3d at ___, 2023 WL 2890196, at *4; *Sahr*, ___ F. Supp. 3d at ___, 2023 WL 2729436, at *4; *Young*, 569 F. Supp. 3d at 903; *Clinton*, 551 F. Supp. 3d at 939; *Wagner*, 2021 WL 521309, at *2–3; *Williams*, 516 F. Supp. 3d at 861; *Wendt*, 2019 WL 13241967, at *5; *Baldwin*, 218 F. Supp. 3d. at 994.

Typically, in these federal cases, the federal and state constitutional claims have risen or fallen together. *See Luong*, ___ F. Supp. 3d at ___, 2023 WL 2890196, at *5–10 (granting summary judgment on federal constitutional claim and declining to exercise supplemental jurisdiction over *Godfrey* claim); *Sahr*, ___ F. Supp. 3d at ___, 2023 WL 2729436, at *6–12, *19–20 (denying summary judgment as to both federal and state unconstitutional seizure claims); *Young*, 569 F. Supp. 3d at 900–04 (granting summary judgment to the city defendants on both federal and state constitutional claims); *Clinton*, 551 F. Supp. 3d at 953 ("For the same reasons they must be denied federal qualified immunity on Clinton's § 1983 claim, Officers Garrett, Steinkamp, and Minnehan must also be denied immunity under state law."); *Williams*, 516 F. Supp. 3d at 869 (denying summary judgment on both federal and state constitutional claims); *Wendt*, 2019 WL 13241967, at *5–6, *15 (granting summary judgment based on qualified immunity on both federal and state constitutional claims). We are aware of only one exception. *See Sahr*, ___ F. Supp. 3d at ___, 2023 WL 2729436, at *16–17, *20–21 (granting summary judgment based on *Harlow* immunity on First Amendment claim but denying it based on all-due-care immunity as to article I, section 7 claim).[6]

In these cases, *Godfrey* does not enable the plaintiff to recover damages they would not otherwise be able to recover.

---

[6]In *Wagner*, which was an original federal court action, the federal district court denied the State's motion to dismiss the § 1983 claims but dismissed the state constitutional claims for want of subject matter jurisdiction given that the State had not waived its jurisdictional objection by removal. 2021 WL 521309, at *2–3.

6. *The reliance interest here is relatively slight.* We are hesitant to overrule a precedent where a significant reliance interest has developed. In *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State* (*PPH IV*), 975 N.W.2d 710 (Iowa 2022), we considered the potential effects of overruling our decision. *Id.* at 734. We asked whether the prior case was "long-standing" and whether "people had 'ordered their thinking and living around that case.' " *PPH IV*, 975 N.W.2d at 733, 735 (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 856 (1992), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)). Here, *Godfrey* is not an entrenched precedent; it was decided only six years ago. *See* 898 N.W.2d at 844. As already discussed, a number of the *Godfrey* cases filed during that period involved either untested theories of constitutional law or overlapping federal and state constitutional claims. We do not believe a meaningful reliance interest has accrued.[7]

7. *There have been difficulties in implementing Godfrey.* We generally do not overrule decisions just because they are wrong. We ask also whether the decision is practically unworkable. *See PPH IV*, 975 N.W.2d at 735–37 (plurality opinion). For example, in *PPH IV*, we overruled a prior constitutional decision after explaining why it was "internally contradictory" and thus "unworkable." *Id.* at 737.[8] We believe that is also the case with *Godfrey*.

---

[7]We also note that last year a member of this court called for the overruling of *Godfrey*. *See Lennette*, 975 N.W.2d at 402 (McDonald, J., concurring).

[8]*See also Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 81–83 (Iowa 2022) (overruling a constitutional precedent because it was "clearly erroneous," "difficult to administer," and had "engender[ed] unnecessary litigation"); *State v. Kilby*, 961 N.W.2d 374, 381 (Iowa 2021) (overruling a prior constitutional decision because it was "manifestly erroneous" and had led to "confusion" about its scope).

*Godfrey* not only has been doctrinally controversial, it has had difficulties in implementation. For one, *Godfrey*'s actual holding is found not in the lead opinion but in Chief Justice Cady's relatively brief concurrence in part and dissent in part. *See* 898 N.W.2d at 880–81 (Cady, C.J., concurring in part and dissenting in part.) Under that separate opinion, a preliminary decision has to be made as to whether there is already an adequate remedy provided by the legislature. *See id.* at 880. But what's an adequate remedy provided by the legislature? Does a common law remedy made available through the ITCA or the IMTCA count? Do the elements of the adequate remedy claim have to be the same as the elements of the constitutional claim? How much relief must be available under the adequate remedy claim? *See Bucco v. W. Iowa Tech Cmty. Coll.*, No. C21–4001–LTS, 2022 WL 605801, at *17 (N.D. Iowa March 1, 2022) ("In the absence of any clarification from Iowa courts on the meaning of 'the legislature,' I will look to *Godfrey* itself. . . . *Godfrey* reflects that the Court considered whether common law remedies would be adequate. While the Court did not directly address whether a common law remedy would be adequate . . . it implied that it would not by referring solely to remedies provided by 'the legislature.' ").

Even the lead opinion acknowledged that *Godfrey* was only a first step. *See* 898 N.W.2d at 880 (lead opinion) ("We express no view on other potential defenses which may be available to the defendants . . . ."). As already noted, our methodology for resolving *Godfrey*'s unanswered questions has not been consistent. *Compare Baldwin II*, 929 N.W.2d at 698–99 (applying the IMTCA's bar on punitive damages in a constitutional tort case against municipal

defendants), *with Wagner*, 952 N.W.2d at 861 (declining to follow *Baldwin II*'s approach as to constitutional tort claims against State defendants).

In addition, our efforts to answer some of *Godfrey*'s unanswered questions have opened up other lines of inquiry. *See, e.g., Luong*, ___ F. Supp. 3d at ___, 2023 WL 2890196, at *10 ("It is an open question . . . whether municipal law enforcement officers can be sued [on a *Godfrey* claim] in their individual capacities."). Federal courts seem to be uncertain of what "all due care" immunity entails. *See Young*, 569 F. Supp. 3d at 900 ("Iowa appellate courts have not yet defined the exact contours of all due care immunity . . . ."); *Clinton*, 551 F. Supp. 3d at 952 ("Iowa's appellate courts have yet to define the precise contours of the 'all due care' standard."). The legislature has now enacted a separate *Harlow*-type immunity, which differs from the "all due care" immunity and whose impact on *Godfrey* claims we have yet to consider. *See* Iowa Acts 2021 ch. 183 §§ 12, 14 (codified at Iowa Code § 669.14A (2022); *id.* § 670.4A); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known.").

This brings us to perhaps the most fundamental problem with *Godfrey*. In the American legal system there have been, historically, two paths for a plaintiff to go to court and recover money damages: the common law and positive law. The common law belongs to the courts. We set the standards for liability and the defenses. Statutes are the legislature's domain. They pass laws which have their

own liability rules and defenses. Of course, the courts and the legislature interact. We interpret statutes, and the legislature can enact laws that modify the common law. But in general, the roles are clear.

A constitution, however, is higher law. Once a court begins constructing damages remedies for constitutional violations—without the rich history of the common law or the clear direction of a statute—tension, conflict, and uncertainty result. There is no clear hierarchy between the judicial branch and the legislative branch. Courts have neither the freedom and flexibility they enjoy with normal common law development nor the specific mandate that a statute provides. Meanwhile, the legislature has a "say" regarding the constitutional damages remedy, but its authority to legislate is circumscribed by adequate-remedy limits which are difficult to delineate. These inevitable and unpredictable forays by each branch into the other's territory violate separation of powers. *See* Iowa Const. art. III, § 1.

We will refer to a recent decision by another state supreme court because we think it illustrates the inherent problems with our *Godfrey* jurisprudence. In *Mack v. Williams*, 522 P.3d 434 (Nev. 2022) (en banc), the Nevada Supreme Court recognized for the first time a constitutional tort claim for damages under article I, section 18 of the Nevada Constitution—its counterpart to article I, section 8. *Id.* at 450. Notably, the court cited *Godfrey* twice with approval. *See id.* at 443, 447.[9]

---

[9]In contrast to the Nevada Supreme Court, the West Virginia Supreme Court has also recently weighed in and found no implied damages remedy under the search and seizure clause of the West Virginia Constitution. *See Fields v. Mellinger*, 851 S.E.2d 789, 799 (W. Va. 2020). A

The case involved a prison visitor who was strip-searched and then denied visitation although no contraband was found. *Id.* at 439. The court endorsed a "case by case" approach to the implication of a private damages remedy under the Nevada Constitution. *Id.* at 444–45. In the court's view, this meant "judiciousness in determining whether an at-issue self-executing provision is enforceable by the requested remedy" and "a degree of deference to legislative determinations" without "treat[ing] legislative action as dispositive." *Id.* at 445. The court also relied heavily on Restatement (Second) of Torts § 874A, which likewise employs a case-by-case approach. *See id.* (citing Restatement (Second) of Torts § 874A, at 301 (Am. L. Inst. 1979)).[10] In addition, the court applied a series of "special factors," concluding that "none disfavor a damages action here." *Id.* at 449. At the end of that process, the court found a private right of action existed to recover damages under article I, section 18 of that state's constitution. *Id.* at 450.

With respect, we think this opinion, although well-written and well-reasoned, nonetheless takes both the judiciary and the legislature outside their proper roles. Legislatures pass laws, which should be followed unless they

---

year earlier, the Vermont Supreme Court concluded that a private right of action for damages was available under the search and seizure clause of the Vermont Constitution under certain circumstances. *Zullo v. State*, 205 A.3d 466, 490–92 (Vt. 2019).

[10]We likewise cited to the Restatement (Second) of Torts in *Godfrey*. 898 N.W.2d at 858 n.4 (citing Restatement (Second) of Torts § 874A & cmt. *a*, at 301 (Am. L. Inst. 1979)). It should be noted that the Restatement (Third) of Torts contains no counterpart to § 874A. In October 2022, the American Law Institute (ALI) announced a project, "Restatement of the Law, Constitutional Torts." ALI's website indicates that it "will examine the law of individual rights to sue government employees and others 'acting under color of state law' under 42 U.S.C. § 1983 and *Bivens* actions." *Restatement of the Law, Constitutional Torts*, Am. L. Inst., https://www.ali.org/projects/show/constitutional-torts [https://perma.cc/LGX5-YHYC]. It is unclear from this description whether the project will include state constitutional claims.

are unconstitutional. They do not make "determinations." Courts decide cases based on precedent and common sense (in the case of the common law) or based on statutory text (in the case of legislation). Courts should be judging, not practicing "judiciousness."

Our constitution is our highest law. It supersedes ordinary legislation to the contrary. But in most areas, it does not come with a private damages remedy. And it does not need our artificial assistance, in the form of a damages remedy not contemplated by our framers, to maintain that supremacy. *See Godfrey*, 898 N.W.2d at 881 (Mansfield, J., dissenting) ("Historically the Iowa Constitution has been, and continues to be, a vital check on government encroachment of individual rights. Our courts enforce that check by invalidating and enjoining actions taken in violation of the constitution.").

In the end, we believe *Godfrey* rests on the proposition that every wrong should have a potential money damages remedy. *See id.* at 848 (lead opinion) ("The very essence of civil liberty certainly consists of the right of every individual to claim the protection of the laws, whenever he receives an injury." (quoting *Marbury v. Madison*, 5 U.S. 137, 163 (1803))); *see also Mack*, 522 P.3d at 442 (quoting the same passage). But that isn't quite true. Marbury didn't receive a remedy, damages or otherwise. *See* 5 U.S. at 180. And persons who are harmed by illegal conduct often do not receive a remedy for any number of different reasons.

In any event, we are aware of no bar to a federal constitutional damages claim under 42 U.S.C. § 1983 against Smith in his individual capacity. In that

instance, the claim and the available relief would be authorized and governed by an Act of Congress rather than developed by our court through a quasi-judicial, quasi-legislative process not approved by our constitution or foreseen by its framers. It should also be noted that the ITCA and the IMTCA generally require the State or the municipality—as the case may be—to indemnify their employees for federal constitutional tort claims. *See* Iowa Code § 669.21(1); *id.* § 670.8(2).

In summary, we hold that *Godfrey* should be overruled, and we no longer recognize a standalone cause of action for money damages under the Iowa Constitution unless authorized by the common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution.

**V. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

All justices join this opinion. Christensen, C.J., files a concurrence.

**CHRISTENSEN, Chief Justice (concurring).**

I join the majority and support overruling *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017). I only write separately to address any alleged inconsistency between my decision today and my past decisions regarding stare decisis—most notably, my partial dissent in *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State* (*PPH IV*), 975 N.W.2d 710, 750 (Iowa 2022) (Christensen, C.J., concurring in part and dissenting in part). There, I dissented from the majority's decision to overrule *Planned Parenthood of the Heartland v. Reynolds ex rel. State* (*PPH II*), 915 N.W.2d 206 (Iowa 2018), "because I [did] not believe any special justification 'over and above the [majority's] belief "that the precedent was wrongly decided" ' warrant[ed] such a swift departure from the court's 2018 decision." *PPH IV*, 975 N.W.2d at 750 (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455–56 (2015)). In doing so, I stressed the importance of stare decisis and its vital role in sustaining the legitimacy of judicial review and maintaining the public's faith in the judiciary. *Id.* at 750–52. My respect for stare decisis has not changed.

The difference between my belief that stare decisis restricted us from overruling the 2018 *PPH II* decision and my belief today that it does not limit us from overruling *Godfrey* is how they fare under the considerations we analyze in reexamining a prior holding. *See id.* at 752–53. In summary, there is a substantial difference between the workability of *PPH II*'s strict scrutiny standard, which we were examining for only the first time in *PPH IV*, and the

workability of *Godfrey*, which we have analyzed seemingly ad nauseam since the court issued that decision. *See, e.g., Wagner v. State*, 952 N.W.2d 843, 858–62 (Iowa 2020); *Venckus v. City of Iowa City* (*Venckus I*), 930 N.W.2d 792, 800–03 (Iowa 2019); *Baldwin v. City of Estherville* (*Baldwin II*), 929 N.W.2d 691, 698–700 (Iowa 2019); *Baldwin v. City of Estherville* (*Baldwin I*), 915 N.W.2d 259, 279–81 (Iowa 2018); *cf. Lennette v. State*, 975 N.W.2d 380, 402 (Iowa 2022) (McDonald, J., concurring).

The federal district courts in Iowa and the Iowa Court of Appeals have similarly questioned *Godfrey*'s reach. *See, e.g., Baldwin v. Estherville*, No. C 15–3168–MWB, 2017 WL 10290551, at *3 (N.D. Iowa Oct. 2, 2017) (certifying a question to the Iowa Supreme Court of whether a defendant can raise a defense of qualified immunity to an individual's claim of damages for violations of article I, section 1 and section 8 of the Iowa Constitution); *Blazek v. City of Nevada*, No. 18–1593, 2019 WL 3721358, at *4 (Iowa Ct. App. Aug. 7, 2019) (acknowledging our court has not clarified whether the public-duty doctrine applies to constitutional tort claims under *Godfrey*). This term alone, we have several pending cases that have been fully briefed and argued that raise issues relating to the interpretation and application of *Godfrey*.

As I wrote in *PPH IV*, we should respect legal authority "because it is important that courts, and lawyers and their clients, may know what the law is and order their affairs accordingly." *PPH IV*, 975 N.W.2d at 754. *Godfrey* never allowed for that because it raised more questions than answers. And as the majority notes, our methodology for answering those questions has not been

consistent. Stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Id.* at 751 (quoting *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2478 (2018)). But nothing about the applicability of *Godfrey* has been evenhanded or predictable.

Notably, even in my partial dissent in *PPH IV*, I highlighted how crucial the court's power to overrule is "for maintaining constitutionalism by correcting mistakes and updating the law." *Id.* at 752 (quoting Steven J. Burton, *The Conflict Between Stare Decisis and Overruling in Constitutional Adjudication*, 35 Cardozo L. Rev. 1687, 1697 (2014)). I have also joined various opinions in my time on the court to either expressly overrule past precedents or support the need to overrule such precedents. *See, e.g.*, *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76–77 (Iowa 2022) (overruling *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168 (Iowa 2004)); *State v. Kuuttila*, 965 N.W.2d 484, 488 (Iowa 2021) (Waterman, J., dissenting, joined by Christensen, C.J., and Mansfield, J.) ("We should overrule *State v. Wright*[, 961 N.W.2d 396 (Iowa 2021),] and rejoin the clear majority of courts holding that antiscavenger ordinances don't trigger a search warrant requirement to peruse property abandoned for disposal."); *State v. Kilby*, 961 N.W.2d 374, 383 (Iowa 2021) (overturning *State v. Pettijohn*, 899 N.W.2d 1 (Iowa 2017)); *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 649 (Iowa 2019) (McDonald, J., concurring specially, joined by Christensen, C.J.) (arguing stare decisis does not compel us to uphold *State v. Lyle*, 854 N.W.2d 378 (Iowa

2014), and *State v. Roby*, 897 N.W.2d 127 (Iowa 2017)). *Unlike PPH II*, those cases contained the sort of special justifications beyond the belief that they were wrongly decided to warrant overruling them. *See PPH IV*, 975 N.W.2d at 752. Those same sort of special justifications exist here to overrule *Godfrey*, so I join the majority, which details these reasons more in-depth.