WIGGINS, Justice.
The United States District Court for the Northern District of Iowa certifies six questions pursuant to Iowa Code section 684A.1 (2019). In our discretion, we answer five of the questions because they meet the criteria of section 684A.1. We do not answer one of the questions because it does not meet the criteria of section 684A.1.
I. Facts Provided to Answer Certified Questions.
"When we answer a certified question, we rely upon the facts provided with the certified question." Baldwin v. City of Estherville (Baldwin II ), 915 N.W.2d 259, 261 (Iowa 2018) ; accord Life Inv'rs Ins. Co. of Am. v. Estate of Corrado , 838 N.W.2d 640, 644 (Iowa 2013) ("[W]e restrict our answer to the facts provided by the certifying court when answering a certified question."). The facts as set forth by the federal court are as follows:
The factual background to this case is set out in considerable detail in [the federal court's] prior ruling on cross-motions for summary judgment, see Baldwin v. Estherville, Iowa [ (Baldwin I ) ], 218 F. Supp. 3d 987, 989-93 (N.D. Iowa 2016), then by the Iowa Supreme Court in Baldwin [II ], 915 N.W.2d 259, 261-65 (Iowa 2018). For present purposes, suffice it to say that, on November 10, 2013, Officers Reineke and Hellickson, of the Estherville City Police, were shown a video by a resident in the Estherville area of a person the officers identified as plaintiff Gregory Baldwin riding a 4-wheeler ATV that proceeded along North 4th Street and turned into a ditch, using the north Joe Hoye Park entrance, after which it continued in the ditch until it reached West 14th Avenue North, where it returned to the roadway.
The officers then reviewed IOWA CODE CH. 321I [ (2014) ], which, inter alia , permitted operation of ATVs only on streets designated by cities, see IOWA CODE § 321I.10(3), because the officers believed that Chapter 321I had been incorporated by reference into the City's Code of Ordinances when Chapter 321 was incorporated. They also consulted The Handbook of Iowa All-Terrain Vehicle and Off-Highway Motorcycle *694 Regulations (Handbook ), which the defendants contended is a handbook frequently relied upon by police officers when determining whether off-road vehicles are operating in compliance with applicable laws. Finally, they discussed the matter with the City's police chief and a police captain. They concluded that the activity shown in the video amounted to a violation of City Ordinance E-321I.10. However, that Ordinance was not valid or in effect at the time, because it did not exist.
Officer Reineke prepared a citation and attempted to serve it on Baldwin at his home, but he was not there. Officer Reineke then refiled the citation with the notation "Request Warrant." On November 12, 2013, a state magistrate entered an order directing that a warrant issue. On November 13, 2013, Officer Hellickson served the warrant on Baldwin and took him to jail. Baldwin's wife posted bond, and Baldwin later pleaded not guilty to the charge.
In the days that followed, the City Attorney discovered that the City had not included IOWA CODE CH. 321I when it incorporated IOWA CODE CH. 321 into the City's Code of Ordinances. The City Attorney was granted leave to amend the charge to allege a violation of a different ordinance, City Ordinance 219-2(2). City Ordinance 219-2 generally permits ATVs to be operated on City streets except where prohibited, but subsection (2) prohibits operation of ATVs "in city parks, playgrounds, or upon any publicly-owned property." On Baldwin's Motion For Adjudication Of Law Points And To Dismiss, the Iowa District Court found that the cited act was not a violation of the City's Code of Ordinances as written and dismissed the case. The state court did so only after making two key constructions of pertinent City Ordinances: (1) that the plain meaning of "street" in City Ordinances included the "ditch," and (2) that "publicly-owned property" in City Ordinance 219-2(2), to the extent that it conflicted with another ordinance defining "street," did not include the "ditch" of a City street. See Baldwin [I ], 218 F. Supp. 3d at 1000-1001.
Baldwin v. Estherville (Baldwin III ), 333 F. Supp. 3d 817, 823-24 (N.D. Iowa 2018) ; see Baldwin v. Estherville (Baldwin IV ), 336 F. Supp. 3d 948, 950 (N.D. Iowa 2018) (order certifying questions) (incorporating by reference the factual statements made in Baldwin I , 218 F. Supp. 3d at 989-93, Baldwin II , 915 N.W.2d at 261-65, and Baldwin III , 333 F. Supp. 3d at 822-24 ). We will refer to the City of Estherville as the "City" in this opinion.
II. Questions Certified by the Federal Court.
In Baldwin II , we answered a certified question from the federal court involving qualified immunity. 915 N.W.2d at 260-61, 281. There we said,
Constitutional torts are torts, not generally strict liability cases. Accordingly, with respect to a damage claim under article I, sections 1 and 8 [of the Iowa Constitution], a government official whose conduct is being challenged will not be subject to damages liability if she or he pleads and proves as an affirmative defense that she or he exercised all due care to conform to the requirements of the law.
Id. at 281.
It is not clear whether Baldwin II addressed whether qualified immunity is available to government employers. See id. ; id. at 281-83 (Appel, J., dissenting); see also Baldwin III , 333 F. Supp. 3d at 831-32. Because the only defendant in this case is a municipality, the federal court has asked additional certified questions. On *695 October 2, the federal court issued an order certifying the following six questions to this court:
1. Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of "all due care"?
2. If the City can assert such a defense, on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.
3. If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?
4. If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?
5. If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?
6. If the answer to either Question No. 3 or Question No. 5 (or both) is in the affirmative, will retroactive application to the pending case be appropriate?
Baldwin IV , 336 F. Supp. 3d at 958-59.
III. Standard of Review and Criteria for Answering Certified Questions.
The statutory provision authorizing us to answer a certified question provides,
The supreme court may answer questions of law certified to it by ... a United States district court ..., when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.
Iowa Code § 684A.1 (2019). Thus, the Code gives us the discretion to answer a certified question if four conditions are met:
(1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause ... pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent.
Life Inv'rs Ins. Co. of Am. , 838 N.W.2d at 643 (alteration in original) (quoting Iowa Code § 648A.1 (2013)).
IV. Certified Question Number 1: A Municipality's Ability to Assert Qualified Immunity Based on Its Officers' Exercise of "All Due Care."
The first certified question from the federal district court is "Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of 'all due *696 care'?" Baldwin IV , 336 F. Supp. 3d at 958. This question essentially asks whether a municipality can be "vicariously immune" from liability for its employees' constitutional torts when the employees would be immune from personal liability. The question does not ask whether a municipality is immune for its own acts.
Baldwin bases his suit against the City on a constitutional tort and the doctrine of respondeat superior. We recognized that a direct cause of action for damages resulting from an Iowa constitutional tort could be brought against the state and state officials in their official capacities in the recent case of Godfrey v. State . 898 N.W.2d 844, 847 (Iowa 2017). Before answering the first certified question, we must determine whether the Iowa Municipal Tort Claims Act (IMTCA) applies to a Godfrey action brought against the municipal employer of the constitutional tortfeasor.[1]
A Godfrey action is the state counterpart to a Bivens action. See id. A Bivens action is a claim brought in federal court against a federal agent to recover damages from the agent's commission of a Federal constitutional tort. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics , 403 U.S. 388, 397, 91 S. Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). The creation of a Bivens action by the United States Supreme Court and our creation of a Godfrey action are consistent with section 874A of the Restatement (Second) of Torts. Section 874A provides,
When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.
Restatement (Second) of Torts § 874A, at 301 (Am. Law Inst. 1979) ; see id. § 874A cmt. a , at 301 (noting "legislative provision" includes constitutional provisions).
Illustration 1 under comment f to section 874A states, "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The court may grant a federal civil remedy in the nature of trespass against a federal officer who makes an unreasonable search of the plaintiff's home." Id. § 874A cmt. f , illus. 1, at 305. The authors of the Restatement took this illustration from Bivens . Id. § 874A Reporter's Note cmt. f , app. at 105.
Comment f further provides,
Relationship to other torts. If, in a particular case, the court determines that it is appropriate to provide a civil action in order to effectuate the policy behind a legislative provision, that civil action will normally sound in tort. A tort action is the form of civil relief that grants damages or injunctive relief for harm wrongfully inflicted upon or threatened to an interest of the injured party. The cause of action will ordinarily be assimilated to the most similar common law tort. Common law torts were created by the courts, and they are still subject to being *697 modified by the courts. If a legislative provision indicates the existence of a significant public policy within the jurisdiction, the courts, in furtherance of that policy, may judicially make modifications in the elements of a common law tort. Sometimes the judicial modification of an established tort comes in regard to the defenses applicable to it. A legislative policy against immunity for a certain type of defendant or against barring a criminal prosecution because of consent of a certain type of plaintiff, for example, may be the occasion for the court to change the scope or availability of the defense in a tort action.
Id. § 874A cmt. f , at 304-05 (citation omitted).
The United States Supreme Court applied these principles when it determined the Federal Tort Claims Act (FTCA) did not preempt a Bivens action even though the underlying facts of the case could also support a claim against the federal government under the FTCA. Carlson v. Green , 446 U.S. 14, 18-19, 100 S. Ct. 1468, 1471-72, 64 L.Ed.2d 15 (1980). The Court acknowledged that a Bivens action may be defeated when the defendant-federal official shows "that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19, 100 S. Ct. at 1471. It found Congress did not intend to make the FTCA the exclusive remedy for federal actors' constitutional torts. Id. at 19-20, 100 S. Ct. at 1472. We cannot say the same for the IMTCA.
The Iowa legislature enacted the IMTCA in 1967. 1967 Iowa Acts ch. 405 (codified at Iowa Code ch. 613A (1971)). The IMTCA imposed liability on municipalities for their own and their employees' torts:
Except as otherwise provided in this Act, every municipality is subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.
Id. § 2 (codified at Iowa Code § 613A.2 ).[2] It originally defined tort as "every civil wrong which results in wrongful death or injury to person or injury to property and includes but is not restricted to actions based upon negligence, breach of duty, and nuisance." Id. § 1 (codified at Iowa Code § 613A.1(3) ).
In 1974, the legislature amended section 613A.1. 1974 Iowa Acts ch. 1263, §§ 1-2 (codified at Iowa Code § 613A.1(3) (1975)). In doing so, the legislature expanded the definition of tort to include violations of constitutional provisions. Id. § 2. The new language, which is the same as in the current Code, states,
"Tort " means every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision , statute or rule of law.
Iowa Code § 670.1(4) (2019) (emphasis added).
The IMTCA expressly dictates immunities for defendant municipalities. Iowa Code § 670.4(1) ; see Jahnke v. Inc. City of Des Moines , 191 N.W.2d 780, 782 (Iowa 1971) (noting the IMTCA eliminated any common law immunities in tort previously given to municipalities). In relevant part, *698 the IMTCA immunizes municipalities against "[a]ny claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid." Iowa Code § 670.4(1)(c ). If the officers exercised due care in executing an ordinance, the City would be immune pursuant to section 670.4(1)(c ).
Therefore, the answer to certified question number 1 is that the due care exemption under section 670.4(1)(c ) could provide the City immunity.
V. Certified Question Number 2: If a Municipality Can Assert Qualified Immunity Based on Its Officers' Exercise of "All Due Care," the City's Ability to Do So Under the Facts of This Case.
The second certified question from the federal district court is
If the City can assert such a defense [ (i.e., qualified immunity based on its officers' exercise of "all due care") ], on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.
Baldwin IV , 336 F. Supp. 3d at 958.
Under Iowa law, we have the discretion to answer a certified question if the question complies with the requirements of section 684A.1. One of the requirements under section 684A.1 is that the question involves a matter of law. Life Inv'rs Ins. Co. of Am. , 838 N.W.2d at 643. This question as posed requires us to apply the facts of this case to the answer to certified question number 1. Therefore, we decline to answer certified question number 2.
VI. Certified Question Number 3: Award of Punitive Damages Against the Municipal Employer of the Constitutional Tortfeasor.
The third certified question from the federal district court is
If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?
Baldwin IV , 336 F. Supp. 3d at 958.
We have decided the IMTCA applies to Baldwin's Iowa constitutional tort causes of action. When the legislature enacted the IMTCA, it did not expressly prohibit a punitive damage award against a municipality. See 1967 Iowa Acts ch. 405. In 1978, we concluded the IMTCA did not prohibit punitive damages against the municipality that was sued for its police officers' commission of the common law tort of false arrest. Young v. City of Des Moines , 262 N.W.2d 612, 614, 622 (Iowa 1978) (en banc), superseded by statute , 1982 Iowa Acts ch. 1018, § 5 (codified at Iowa Code § 613A.4(5) (1983) (now § 670.4(1)(e ) )), as recognized in Parks v. City of Marshalltown , 440 N.W.2d 377, 379 (Iowa 1989). In response to Young , the legislature amended the IMTCA to exempt municipalities from punitive damages liability. Parks , 440 N.W.2d at 379 ; see S.F. 474, 69th G.A., 1st Sess., Explanation (Iowa 1981).
Therefore, the answer to certified question number 3 is that *699 section 670.4(1)(e ) precludes an award of punitive damages against the municipality that employed the constitutional tortfeasor.
VII. Certified Question Number 4: Punitive Damages Under the Facts of This Case.
The fourth certified question from the federal district court is "If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?" Baldwin IV , 336 F. Supp. 3d at 958. Because we hold no punitive damages are available against the municipal employer of the constitutional tortfeasor under the IMTCA, we need not answer this question.
VIII. Certified Question Number 5: Award of Attorney Fees Against the Municipal Employer of the Constitutional Tortfeasor.
The fifth certified question from the federal district court is
If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?
Id. at 958-59.
Ordinarily, under the American rule each party is responsible for their own attorney fees and costs. De Stefano v. Apts. Downtown, Inc. , 879 N.W.2d 155, 168 (Iowa 2016). There are exceptions to the rule. One of these exceptions shifts the attorney fees of the victor to the losing party if there is an express statutory authorization to do so. See Lee v. State , 906 N.W.2d 186, 197 (Iowa 2018). Another exception is an award of common law attorney fees under very limited circumstances. Williams v. Van Sickel , 659 N.W.2d 572, 579 (Iowa 2003). In following the guidance of the Restatement (Second) of Torts, these are the only two situations where attorney fees can be shifted to the losing party in a Godfrey action. See Restatement (Second) of Torts § 914(1) & cmt. a , at 492 (noting exceptions to American rule on attorney fees).
In a Godfrey claim, like in a Bivens claim, there is no express statutory authorization for attorney fees. Cf., e.g. , Alexander A. Reinert, Measuring the Success of Bivens Litigation and Its Consequences for the Individual Liability Model , 62 Stan. L. Rev. 809, 811 n.6 (2010) (citing Kreines v. United States , 33 F.3d 1105 (9th Cir. 1994) ) (noting there is no statutory provision that allows for attorney fees in a Bivens claim, unlike 42 U.S.C. § 1988, which allows for attorney fees in a § 1983 claim). Baldwin contends that 42 U.S.C. § 1988, Iowa Code section 669.15, and Iowa Code chapter 216 authorize attorney fees to the prevailing plaintiff in a Godfrey claim against a municipality. This position is untenable because none of those provisions extend to his cause of action.
Section 1988 allows attorney fees
[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34.
42 U.S.C. § 1988(b) (2012). Neither a generic Godfrey action brought against a municipality nor Baldwin's particular claim against the City is one of those.
*700 Iowa Code section 669.15 is found in chapter 669, the Iowa Tort Claims Act. The Iowa Tort Claims Act does not cover suits against municipalities. Iowa Code § 669.2(3) (2019). Therefore, section 669.15 does not apply to either a generic Godfrey claim brought against a municipality or Baldwin's particular claim against the City.
Finally, Iowa Code section 216.15(9)(a )(8) allows the civil rights commission to order payment of attorney fees if it determines the defendant engaged in discriminatory or unfair practices. This is not a civil rights case under chapter 216. Thus, we do not find an express statutory provision for attorney fees.
But there is also a rare exception to the American rule on attorney fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Remer v. Bd. of Med. Exam'rs , 576 N.W.2d 598, 603 (Iowa 1998) (en banc) (quoting Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc. , 510 N.W.2d 153, 158 (Iowa 1993) ); accord Alyeska Pipeline Serv. Co. v. Wilderness Soc'y , 421 U.S. 240, 258-59, 95 S. Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Under those circumstances, a court may award attorney fees. Remer , 576 N.W.2d at 603. It will be up to the trial court to determine if Baldwin can meet the common law standard. See Hockenberg Equip. Co. , 510 N.W.2d at 159.
Therefore, the answer to certified question number 5 is that in a Godfrey action, a court cannot award attorney fees against the municipal employer of the constitutional tortfeasor unless there is a statute expressly allowing such an award. We find none here. As for the common law rule regarding awarding attorney fees to the victorious party, it will be up to the trial court to determine if Baldwin has met the common law standard. See id. at 159-60 (setting forth standard for common law attorney fees).
IX. Certified Question Number 6: Retroactive Application of Answers to Certified Questions on Punitive Damages and Attorney Fees.
The sixth certified question from the federal district court is "If the answer to either Question No. 3 or Question No. 5 (or both) is in the affirmative, will retroactive application to the pending case be appropriate?" Baldwin IV , 336 F. Supp. 3d at 959.
Because we conclude the IMTCA prohibits an award of punitive damages against the municipal employer of the constitutional tortfeasor, we need not answer this question with respect to punitive damages. However, because we conclude common law attorney fees may be available in a Godfrey action against the municipal employer of the constitutional tortfeasor, we will proceed to answer this question with respect to common law attorney fees.
The City cites Beeck v. S.R. Smith Co. , 359 N.W.2d 482 (Iowa 1984), for the proposition that if we conclude attorney fees may be awarded against the municipal employer, that conclusion should not apply retroactively. Beeck involved a certified question from a federal court asking whether a minor's newly established cause of action for loss of parental consortium should be given retroactive effect. Id. at 484. The case did not involve a question of whether the availability of attorney fees in a cause of action should be given retroactive effect.
However, even if we apply the Beeck test, the possibility of common law attorney fees is available to Baldwin. In Beeck , we adopted a three-factor test for determining retroactivity of a cause of action. Id. The test we enumerated was,
*701 First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
Id. (alterations in original) (citations omitted) (quoting Chevron Oil Co. v. Hudson , 404 U.S. 97, 106-07, 92 S. Ct. 349, 355, 30 L.Ed.2d 296 (1971), abrogated in part by Harper v. Va. Dep't of Taxation , 509 U.S. 86, 96-97, 113 S. Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) ).
We have allowed common law attorney fees in tort actions for over 100 years. E.g. , Dorris v. Miller , 105 Iowa 564, 568, 75 N.W. 482, 483 (1898) (holding if the defendant's acts are "tainted by fraud, malice, or insult," the jury may award punitive damages and, in so doing, may include attorney fees in its award (quoting Theodore Sedgwick, A Treatise on the Measure of Damages 105 (Arthur G. Sedgwick ed., New York, Baker, Voorhis & Co., 5th ed. 1869), https://babel.hathitrust.org/cgi/pt?id=uc2.ark:/13960/t0cv4mr8h;view=1up;seq=7 [https://hdl.handle.net/2027/uc2.ark:/13960/t0cv4mr8h] )), superseded by statute , 1986 Iowa Acts ch. 1211, § 42 (codified as amended at Iowa Code § 668A.1 ), as recognized in Hockenberg Equip. Co. , 510 N.W.2d at 159.
Application of the Beeck factors reveals fairness does not require only prospective application of our conclusion that in a Godfrey action, common law attorney fees may be available against the municipal employer of the constitutional tortfeasor. See 359 N.W.2d at 484. We are not creating a new principle of law by allowing common law attorney fees. Rather, we are applying time-honored tort principles. Common law attorney fees are to compensate a party when the opposing side "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Remer , 576 N.W.2d at 603 (quoting Hockenberg Equip. Co. , 510 N.W.2d at 158 ). We see no reason not to allow common law attorney fees in this tort action.
Therefore, the answer to certified question number 6 is that it is appropriate to retroactively apply our conclusion that in a Godfrey action, common law attorney fees may be available against the municipal employer of the constitutional tortfeasor. Thus, Baldwin can receive an award of common law attorney fees in this action against the City if he can meet the standard for common law attorney fees.
X. Disposition.
We answer the questions certified by the federal district court as follows:
1. Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of "all due care"?
Answer: The due care exemption under section 670.4(1)(c ) could provide the City with immunity.
2. If the City can assert such a defense, on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under *702 article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.
Answer: The question as posed requires us to apply the facts of this case to the answer to certified question number 1. Therefore, we decline to answer certified question number 2.
3. If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?
Answer: No. The punitive damages exemption under section 670.4(1)(e ) precludes a plaintiff from collecting punitive damages from the municipal employer of the constitutional tortfeasor.
4. If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?
Answer: Because we hold the IMTCA immunizes municipal employers of constitutional tortfeasors against punitive damages, we need not answer this question.
5. If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?
Answer: In a Godfrey action, a court cannot award attorney fees against the municipal employer of the constitutional tortfeasor unless there is an express statute allowing for such an award or the prevailing party satisfies the standard for common law attorney fees. We find no express statutory authorization for attorney fees here. As for common law attorney fees, it will be up to the trial court to determine if Baldwin has met the common law standard.
6. If the answer to either Question No. 3 or Question No. 5 (or both) is in the affirmative, will retroactive application to the pending case be appropriate?
Answer: Because the IMTCA prohibits an award of punitive damages against the municipal employer of the constitutional tortfeasor, we need not answer this question with respect to punitive damages. With respect to common law attorney fees, we answer that it is appropriate to retroactively apply our conclusion that in a Godfrey action, common law attorney fees may be available against the municipal employer of the constitutional tortfeasor. Thus, Baldwin can receive an award of common law attorney fees in this action against the City if he can meet the standard for common law attorney fees.
CERTIFIED QUESTIONS ANSWERED.
All justices concur except Appel, J., who concurs in part and dissents in part.

In his petition, which was filed before our decision in Godfrey , Baldwin stated that his suit challenging the violation of his constitutional rights was brought under the Iowa Constitution and that his causes of action regarding the violation of his Iowa constitutional rights were brought pursuant to Iowa Code chapter 670, the IMTCA. However, in his court filings subsequent to our Godfrey decision, Baldwin only contends his Iowa constitutional claims were brought directly under the Iowa Constitution.

This provision is currently codified at Iowa Code section 670.2(1) (2019) and is substantially the same as when enacted except the word agents has been removed.