# In the Iowa Supreme Court

No. 24–0700

Submitted February 19, 2025—Filed May 9, 2025

**Parent Father Doe** and **Parent Mother Doe,** individually and as parents and next friends of **Minor Doe,**

Appellants,

vs.

**Western Dubuque Community School District** and **Jessica Pape, Dan Butler,** and **Scott Firzlaff,** in their official capacities,

Appellees.

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, judge.

Plaintiffs appeal an order dismissing their petition due to the plaintiffs' use of pseudonyms in their petition and the plaintiffs' failure to comply with the heightened pleading standards in the qualified immunity provision in Iowa Code section 670.4A(3). **Affirmed in Part, Reversed in Part, and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Richard A. Pundt (argued) and Vincent Pundt of Pundt Law Office, Cedar Rapids, for appellants.

Dustin T. Zeschke (argued) of Swisher & Cohrt, PLC, Waterloo, for appellees.

**McDonald, Justice.**

Minor Doe, Father Doe, and Mother Doe filed suit against a school district and several school district officials and employees after Minor Doe was attacked by another student during school. The Does asserted claims for negligence, breach of fiduciary duty, and loss of consortium. On the defendants' motion, the district court dismissed the Does' suit on four grounds: first, the Does failed to comply with the heightened pleading requirements in the qualified immunity provision of the Iowa Municipal Tort Claims Act (IMTCA); second, the rules of civil procedure disallow pseudonymous petitions; third, the breach of fiduciary duty claim failed as a matter of law; and fourth, the consortium claim failed as a matter of law without the underlying causes of action. We conclude the district court erred in granting the defendants' motion to dismiss on the first, second, and fourth grounds, and we reverse and remand for further proceedings. We affirm the district court's dismissal of the plaintiffs' breach of fiduciary duty claim.

I.

On January 12, 2023, Minor Doe was an eighth-grade student attending Drexler Middle School in the Western Dubuque Community School District. She was participating in an industrial arts technology class when another student assaulted her over the head with a board. Minor Doe never had any prior issues with her assailant, but school personnel were aware of past disciplinary matters involving the assailant.

After the assault, Minor Doe was taken from the classroom to the principal's office and left unattended. She was semiconscious. She had blurred vision and a headache. After some time passed, a school nurse came to the

principal's office. The nurse brought Minor Doe two ibuprofen tablets. Minor Doe returned to class approximately one hour after the assault.

According to the petition, the school did not contact proper medical personnel or Minor Doe's parents after the assault. Minor Doe, however, did contact Father Doe. Minor Doe told her father about the assault and asked for help. Father Doe notified Mother Doe of the assault. Mother Doe came to the school office, removed Minor Doe from class, and took Minor Doe to the hospital. Minor Doe was diagnosed with a concussion and other injuries.

The Does sued the Western Dubuque Community School District, Jessica Pape (the school board president), Dan Butler (the school district superintendent), and Scott Firzlaff (the Drexler Middle School principal), each in their official capacities. The petition was filed using fictitious names: "PARENT FATHER DOE and PARENT MOTHER DOE parents and next friend for: MINOR DOE, and INDIVIDUALLY, on their own behalf, as parents." The Does asserted three causes of action against the defendants: (1) negligence, (2) breach of fiduciary duty, and (3) loss of consortium.

At the time the Does filed their petition, they also filed a motion to increase the security level of the entire case. The security level designation in the court's electronic filing system controls access to case information, case events, and case documents. For example, case information in a case assigned security level 0 is available to the public, but case information in a case assigned security level 9 is restricted to judges and clerks of court. The Does claimed that a heightened security level was required in this case due to the "sensitive circumstances relating to this matter." The district court denied the motion to elevate the security level of the entire case. However, the court did order "that the identity of the minor child, the identity of the parent[s] of the minor child and

the social security numbers of each, along with birth dates and other personal information shall be maintained in this matter as a Level One security measure and shall not be publicly disclosed pursuant to Chapter 16 of the Code of Iowa and Rule 16.602 and Rule 16.604, Iowa Rules of Electronic Procedure, Division VI, Personal Privacy Protection."

The plaintiffs served original notices on each of the defendants. The original notices did not include the real names of the plaintiffs. Instead, they contained the pseudonyms Minor Doe, Mother Doe, and Father Doe.

After the defendants were served with original notices, the defendants filed a pre-answer motion to dismiss. They asserted three grounds for dismissal. First, the defendants contended the petition failed to meet the heightened pleading requirements set forth in the IMTCA's qualified immunity provision. *See* Iowa Code § 670.4A(3) (2023). In particular, the defendants contended the petition failed to state the law was clearly established at the time of the alleged violations. Second, the defendants maintained the district court lacked jurisdiction over the case. According to the defendants, Iowa Rule of Civil Procedure 1.201 requires that every action must be prosecuted in the name of the real party in interest, and Iowa Rule of Civil Procedure 1.302 provides that original notices must contain the real name of the parties. The plaintiffs' use of fictitious names in the petition and original notices instead of their real names thus failed to confer the district court with jurisdiction over the defendants. Third, the defendants asserted the Does' breach of fiduciary duty claim failed as a matter of law.

The district court granted the defendants' motion. The district court held that the petition failed to satisfy the qualified immunity pleading requirements in Iowa Code section 670.4A and that dismissal with prejudice was required. With respect to the jurisdictional argument, the district court did not reject

out-of-hand that the Does could proceed anonymously, but it found that there was no "credible support asserted by the [Does] to proceed anonymously." Because there was no need for the plaintiffs to proceed anonymously, the district court reasoned the original notices were defective and did not confer jurisdiction over the defendants. The district court held the plaintiffs' claim for breach of fiduciary duty failed as a matter of law because the petition failed to allege any facts sufficient to establish a fiduciary relationship between the defendants and Minor Doe. Finally, the district court concluded the plaintiffs' consortium claim failed as a matter of law because it was merely derivative of the now-dismissed underlying claims.

## II.

We first address the district court's ruling on the municipal qualified immunity provision, Iowa Code section 670.4A. We conclude the district court erred in holding that section 670.4A required dismissal of this petition. The history of the IMTCA, the circumstances surrounding the passage of the qualified immunity provision, and the text of the qualified immunity provision, when read in conjunction with federal qualified immunity law from which it borrowed, demonstrate the municipal qualified immunity provision is inapplicable to the plaintiffs' common law claims.

## A.

The IMTCA was enacted in 1967. *See Thomas v. Gavin*, 838 N.W.2d 518, 521 (Iowa 2013); 1967 Iowa Acts ch. 405 (originally codified at Iowa Code ch. 613A (1971), now codified as amended at Iowa Code ch. 670 (2023)). It provides that "every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Iowa Code

§ 670.2(1). The IMTCA exempts certain claims from the act. *See id.* § 670.4(1). For example, the Act exempts "[a]ny claim by an employee of the municipality which is covered by the Iowa workers' compensation law." *Id.* § 670.4(1)(*a*). As to exempted claims, a "municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability." *Id.* § 670.4(1).

Fifty years after the passage of the IMTCA, in *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), this "court held for the first time that state officials could be sued directly under the Bill of Rights of the Iowa Constitution for money damages." *Burnett v. Smith*, 990 N.W.2d 289, 293 (Iowa 2023). The *Godfrey* court created a state constitutional tort claim where none had before existed. *See* 898 N.W.2d at 870–72. Although *Godfrey* involved a state official, its rationale was not limited to state officials. *See id.* at 845. Soon enough, plaintiffs began to assert state constitutional tort claims against municipal government officials as well. *See, e.g.*, *White v. Harkrider*, 990 N.W.2d 647, 651 (Iowa 2023); *Baldwin v. City of Estherville*, 929 N.W.2d 691, 696 (Iowa 2019); *Venckus v. City of Iowa City*, 930 N.W.2d 792, 799 (Iowa 2019). After *Godfrey*, this court labored "to fill in the details of this court-devised remedy." *Burnett*, 990 N.W.2d at 293. This court attempted to resolve a host of new questions that the state constitutional tort created: whether qualified immunity was available as a defense, and if so, what was the standard; whether the judicial process immunity was available as a defense; whether punitive damages could be recovered; whether attorney fees could be recovered; what was the controlling statute of limitations; and other ancillary questions. *Id.* at 297. "On almost all of these issues, our court was divided." *Id.*

While we were navigating this new constitutional terrain, the legislature passed the municipal qualified immunity provision at issue in this case. *See* 2021 Iowa Acts ch. 183, § 14 (codified at Iowa Code § 670.4A (2022)). The municipal qualified immunity statute did three things. First, section 670.4A(1) provided a substantive qualified immunity defense to officers and employees of municipalities. *See Nahas v. Polk County*, 991 N.W.2d 770, 776 (Iowa 2023); *Victoriano v. City of Waterloo*, 984 N.W.2d 178, 181 (Iowa 2023). Second, section 670.4A(3) established a heightened pleading requirement distinct from Iowa's notice pleading requirement. *See Nahas*, 991 N.W.2d at 776–77; *Victoriano*, 984 N.W.2d at 181. Third, section 670.4A(4) provided a statutory right of interlocutory appeal from the denial of qualified immunity.

The legislature did not blaze new ground in enacting the municipal qualified immunity provision. Instead, the legislature followed the well-trodden path of federal qualified immunity law. Under federal law, a party can sue any person acting under color of state law for any "deprivation" of "rights, privileges, or immunities" secured by the Federal Constitution or federal statutes. 42 U.S.C. § 1983. Like *Godfrey*, section 1983 "creates 'a species of tort liability.' " *Memphis Cmty Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)). The Supreme Court holds that government officials are qualifiedly immune from these tort claims and cannot be liable for damages unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The substantive municipal qualified immunity defense is lifted directly from this body of federal law. Iowa Code section 670.4A(1)(*a*) provides that an employee or officer shall not be liable unless the "right, privilege, or immunity" was "clearly established at the time of

the alleged deprivation" or "the state of the law was . . . sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law."

Like the substantive defense, the municipal qualified immunity pleading standard draws on federal law. It has three components. First, a plaintiff "alleging a violation of the law must state with particularity the circumstances constituting the violation." *Id.* § 670.4A(3). Second, the statute requires the plaintiff to "plead a plausible violation" of law. *Id.* Third, the plaintiff must plead "that the law was clearly established at the time of the alleged violation." *Id.* These qualified immunity pleading standards are borrowed partly from federal law, which requires pleading facts sufficient to overcome a qualified immunity defense. *See Nahas*, 991 N.W.2d at 781–82.

The substantive qualified immunity defense and the qualified immunity pleading standards contained in section 670.4A must be read together as a whole. *See City & County of San Francisco v. EPA*, 145 S. Ct. 704, 717 (2025) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' " (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014))). After all, the Code section is titled "Qualified immunity," from which we can infer that all subsections within section 670.4A apply only when qualified immunity is at issue. *See State v. Tague*, 676 N.W.2d 197, 201–02 (Iowa 2004) (stating that the title of a statute can be considered in determining the application of a statute). In addition, the statute treats the substantive defense and pleading requirement as one unified qualified immunity defense. It provides that any decision "denying qualified immunity," which includes denial of the substantive defense and denial of a pleadings challenge, "shall be immediately

appealable." Iowa Code § 670.4A(5). When section 670.4A is viewed as a whole, it is clear the substantive defense and heightened pleading requirement are a couplet.

As a couplet, when the substantive qualified immunity defense is inapplicable, then the heightened qualified immunity pleading standard is also inapplicable. For example, in *Dickey v. Mahaska Health Partnership*, 705 F. Supp. 3d 883 (S.D. Iowa 2023), the plaintiff brought several claims under the Iowa Civil Rights Act against the Mahaska Health Partnership and several of its employees in federal district court. *Id.* at 887–88. The defendants attempted to invoke section 670.4A as a defense. *Id.* at 890. The court held that the defendants were "not entitled to raise qualified immunity or other IMTCA defenses to Dickey's ICRA claims except insofar as those defenses also would be available under the ICRA itself." *Id.* at 894. The court did apply heightened pleading standards to the complaint because the heightened pleading requirements were "the applicable pleading standards under the Federal Rules of Civil Procedure" and not because of section 670.4A. *Id.*

In *1000 Friends of Iowa v. Polk County Board of Supervisors*, ___ N.W.3d ___, 2025 WL 1007321 (Iowa Apr. 4, 2025), we held that the qualified immunity defense and qualified immunity pleading standard must be read and applied together as a whole. *Id.* at ___, 2025 WL 1007321, at *4. There, the plaintiffs brought a statutory cause of action against a municipality seeking nonmonetary relief. *Id.* at ___, 2025 WL 1007321, at *2. The district court dismissed the suit on the ground the plaintiffs failed to meet the heightened pleading requirement under section 670.4A(3). *Id.* at ___, 2025 WL 1007321, at *3. We reversed the judgment of the district court. *Id.* at ___, 2025 WL 1007321, at *4. We explained the substantive qualified immunity defense applied only to claims seeking

monetary damages. *See id.* at \_\_\_, 2025 WL 1007321, at *3–4. We then explained that the substantive immunity defense and heightened pleading standard had to be read together. *See id.* at \_\_\_, 2025 WL 1007321, at *3–4. The "two subsections were added to the statute at the same time in the same enactment." *Id.* at \_\_\_, 2025 WL 1007321, at *3. We found "no evidence of any textual attempt to create some difference in scope between the types of claims that the subsections cover." *Id.* at \_\_\_, 2025 WL 1007321, at *4. We concluded that section "670.4A implies a coordinated, rather than an independent, interpretation within its subsections about the type of claim it covers." *Id.* at \_\_\_, 2025 WL 1007321, at *4. Because the plaintiffs' claim did not seek monetary damages, we held that neither the substantive qualified immunity defense nor the heightened qualified immunity pleading standard applied. *See id.* at \_\_\_, 2025 WL 1007321, at *4.

Prior to *1000 Friends of Iowa*, in *Nahas*, we stated the substantive defense and pleading standard were "inextricably intertwined," 991 N.W.2d at 780, but we did not apply them in that case as if they were. In that case, we concluded that the substantive qualified immunity defense did not apply because it would be an impermissible retroactive application of the statute, but we nonetheless held that certain portions of the heightened pleading standard could be applied—essentially treating the "particularity" and "plausible violation" pleading requirement of section 670.4A(3) separate from the "clearly established" pleading requirement. *See id.* at 778–80. On further reflection, we conclude the application of any of the heightened pleading standard to claims not subject to the qualified immunity defense was erroneous. The substantive defense and heightened pleading are contained in one provision and are inextricably intertwined. *See 1000 Friends of Iowa*, \_\_\_ N.W.3d at \_\_\_, 2025 WL 1007321, at *4. The qualified immunity defense and the heightened pleading standard apply

en toto or not at all. *See id.* To the extent *Nahas* said something different, we overrule it and follow the guidance of *1000 Friends of Iowa.* Although we are reluctant to overrule our precedents, we have a duty to correct course and turn back before the passage of time cements the decision. *See, e.g., TSB Holdings, L.L.C. v. Bd. of Adjustment,* 913 N.W.2d 1, 10–14 (Iowa 2018) (overruling *Dakota, Minnesota & Eastern Railroad v. Iowa District Court,* 898 N.W.2d 127 (Iowa 2017), after a re-examination of its holding).

B.

Several signposts lead us to conclude that the municipal qualified immunity couplet contained in section 670.4A is inapplicable to the claims at issue in this case: the statute's incorporation of federal law limits the applicability of the statute; the statutory text is wholly inapt when applied to common law claims; and the statute, as applied to common law claims, is not capable of fair and consistent judicial administration.

The incorporation of federal qualified immunity law into section 670.4A is legally significant. When law "is obviously transplanted from another legal source . . . it brings the old soil with it." *Beverage v. Alcoa, Inc.,* 975 N.W.2d 670, 682 (Iowa 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012)). Under federal law, the qualified immunity defense applies only to alleged violations of statutory or constitutional rights. *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (per curiam); *see also Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (discussing the two-step qualified immunity analysis). Under federal law, qualified immunity is not a defense to common law claims. *See Cousins v. Lockyer,* 568 F.3d 1063, 1072 (9th Cir. 2009) (recognizing that "qualified immunity is a doctrine of *federal* common law" and does not apply to state claims); *Mawhirt v. Ahmed,* 8 F. App'x 125, 127 (2d Cir. 2001)

(recognizing that "the federal law doctrine of qualified immunity does not apply to state law claims"); *Greiner v. City of Champlin*, 816 F. Supp. 528, 545 (D. Minn. 1993) (holding federal qualified immunity does not apply to state common law claims), *rev'd in part on other grounds*, 27 F.3d 1346 (8th Cir. 1994); *Gordon v. District of Columbia*, 309 A.3d 543, 559 (D.C. 2024) ("Qualified immunity does not shield government officials from liability for common law torts, like a claim of trespass."). To keep step with federal law, we conclude that section 670.4A applies only where the plaintiff has asserted a state constitutional tort claim or statutory claim and not where the plaintiff has asserted only a state common law claim. *See Dickey*, 705 F. Supp. 3d at 893 ("[T]he timing . . . of the most recent amendments to the IMTCA make clear that the Iowa Legislature's focus was . . . constitutional tort claims under the Iowa Constitution."); *see also Harmann v. Arganbright*, No. 4:24-cv-00336-SHL-WPK, 2025 WL 481586, at *5 (S.D. Iowa Feb. 5, 2025) (stating that it appears the legislature adopted "a state law version of qualified immunity that tracks the qualified immunity doctrine as it exists under federal law" (quoting *Stark v. Hamelton*, No. 3:18-cv-00069-RGE-SHL, 2021 WL 4056716, at *4 (S.D. Iowa Sept. 2, 2021))).

Our conclusion that the qualified immunity defense was intended to mirror federal law and that the qualified immunity defense does not apply to state common law claims is further evidenced by the text of the statute. Section 670.4A(1)(*a*) provides that an employee or officer cannot be liable unless "[t]he right, privilege, or immunity secured by law" was "clearly established at the time of the alleged deprivation." The statutory terminology is ill-fitted to common law claims. For example, consider a personal injury negligence claim arising out of a vehicle crash involving a municipal employee. A negligence claim speaks in terms of duty and breach and not in terms of right, privilege, or

immunity. What is the right, privilege, or immunity at issue in a personal injury case arising out of a vehicle crash? The statute also provides the right, privilege, or immunity must be "secured by law." *Id.* This language is inapt when applied in a negligence case. The statute creates a qualified immunity defense in response to a claimed "deprivation" of a right, privilege, or immunity. *Id.* Again, the deprivation language is ill-suited when applied to a negligence claim. The malapropos terminology evidences a doctrinal and conceptual mismatch between the qualified immunity statute when applied to common law claims. We cannot shoehorn the plain language of the statute to force a fit where none exists and where none was intended.

Because there is no doctrinal or conceptual fit, section 670.4A would pose insurmountable problems of judicial administration when applied to common law claims. In particular, the qualified immunity defense, when applied to common law claims, creates significant level-of-generality problems. *See City of Escondido v. Emmons*, 586 U.S. 38, 42–44 (2019) (per curiam) (discussing the level-of-generality problem in qualified immunity cases). Consider again the personal injury negligence claim arising out of a vehicle crash with a municipal employee. What is the right, privilege, or immunity at issue (to the extent those terms make any sense in this context)? Is it the right, privilege, or immunity to be free from physical injury? Or the right, privilege, or immunity to be free from physical injury caused by unreasonable operation of a motor vehicle? Do the specifications of alleged negligence matter? Perhaps the right, privilege, or immunity is to be free from physical injury caused by excessive speeding? What about the failure to yield? Do the people have a clearly established right, privilege, or immunity to be free from being rear-ended? T-boned? Side-swiped? These types of "arbitrary distinctions render[] constitutional tort law functionally

unintelligible." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (quoting John C. Jeffries, Jr., *The Liability Rule for Constitutional Torts*, 99 Va. L. Rev. 207, 208 (2013)). That unintelligibility would only be amplified when applied to common law claims. We cannot conclude the legislature, in responding to *Godfrey,* meant to send litigants and the courts down this trail of illusory and immaterial distinctions.

## C.

Section 670.4A was intended to serve as shelter from the *Godfrey* storm. This is evidenced by the timing of its passage. *See Dickey*, 705 F. Supp. 3d at 893–94. This is evidenced by the text of the statute when read in accord with the federal law it mapped. This is evidenced by practical considerations in the administration of the statute. When we interpret statutes, we must presume the legislature intended a "just and reasonable result." Iowa Code § 4.4(3). We cannot conclude that the legislature intended, in enacting section 670.4A, to effectively repeal the common law system of municipal officer and employee liability that has been in place since 1967. The district court erred in concluding that section 670.4A required dismissal here.

## III.

Moving on, we advance to the issue of whether pseudonymous petitions are permissible. We conclude that pseudonymous petitions are generally disfavored but that there may be some circumstances in which they are allowed. Those circumstances were not met here, but dismissal was not the appropriate remedy.

We begin with the defendants' arguments first. The defendants insist the rules of civil procedure disallow fictitious-name petitions. Iowa Rule of Civil Procedure 1.201 states, "Every action must be prosecuted in the name of the

real party in interest." Further, "The original notice shall contain . . . [t]he name of the court and the names of the parties." *Id.* r. 1.302(1)(*a*). In *Krebs v. Town of Manson*, 129 N.W.2d 744 (Iowa 1964), decided under a precursor to Iowa Rule of Civil Procedure 1.302, we stated, "An original notice which does not contain the matter required by [Rule 1.302] is [f]atally defective and does not confer jurisdiction over the party served with such defective notice." *Id.* at 745–46. The defendants urge that these rules and *Krebs* preclude the filing of a petition using a fictitious name.

We think the defendants overread the rules and our caselaw. The defendants place too much emphasis on the word "name" in rules 1.201 and 1.302(1). Rule 1.201 requires that the real parties in interest are the ones pursuing the litigation, and we know from the personal information form in this file that the plaintiffs are the real parties in interest. This conclusion is bolstered by the dismissal provision of rule 1.201, which provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for . . . substitution of[] the real party in interest." The rule's use of the word "substitution" implies that a different party, i.e., the real party in interest, would take the place of the named party. The rule really does not contemplate or address merely disclosing the name of a real party in interest who chose to file pseudonymously.

In any event, as rule 1.201 makes clear, dismissal was not the appropriate remedy here. Even if the rule required the real parties in interest to identify themselves in the petition using their legal names instead of fictitious names, the Does should have been afforded an opportunity to amend their petition. *See* Iowa R. Civ. P. 1.201. "[M]ere irregularities which relate principally to the form

of the notice or to technical or clerical errors, and which do not deceive or mislead the defendant, will not be found fatal to the jurisdiction of the court . . . ." *Parkhurst v. White*, 118 N.W.2d 47, 49–50 (Iowa 1962). The conclusion that a technical defect in the original notice defeats jurisdiction has been abandoned. *See Point Builders, L.L.C. v. Shi Zhong Zheng*, No. 13–0119, 2013 WL 6405325, at *3 (Iowa Ct. App. Dec. 5, 2013) ("It was hoped, with the amendment of our process rules in 1975, that parties served with an original notice of actions then on file would find no advantage in searching out technical defects or omissions in the original notice." (quoting *Patten v. City of Waterloo*, 260 N.W.2d 840, 842 (Iowa 1977))).

The plaintiffs take a different path than the defendants. They assert that the Iowa Rules of Electronic Procedure trump the rules of civil procedure and require anonymity to protect the identity of Minor Doe. The rules of electronic procedure govern the filing of all documents in the court's electronic document management system and trump any other inconsistent Iowa court rule. *See* Iowa R. Elec. P. 16.101(1) (stating that the rules govern electronic filing), r. 16.103 ("To the extent these rules are inconsistent with any other Iowa court rule, the rules in this chapter govern electronically filed cases . . . ."); *State v. Mendoza*, 999 N.W.2d 311, 314 (Iowa Ct. App. 2023) ("[T]he rules of electronic procedure control when they are inconsistent with other Iowa court rules."). The Does argue that rule 16.602 requires the identity of Minor Doe be concealed. *See* Iowa R. Elec. P. 16.602 ("Protected information includes the following: . . . Names of minor children."). The plaintiffs extrapolate from there that Mother Doe and Father Doe must be allowed to proceed under fictitious names to protect the identity of Minor Doe.

Like the defendants, the plaintiffs overread the rules on which they rely. Rule 16.602(4) provides that the "[n]ames of minor children" are protected information. This means only that the "names" of minor children are not included within filings. Under our practice, parties use the minor's initials to avoid disclosure of the name. *See generally Tarbox ex rel. S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.,* 13 N.W.3d 546 (Iowa 2024) (referring to minor child as "S.K."). While the rule treats the "names" of minor children as protected information, the rule does not treat the "identity" of the minor child as protected information. In other words, the rule does not require the omission of any and all information in a filing that could be used to discern the identity of the minor. Any such reading is impractical and inconsistent with actual practice. For example, spouses in a dissolution proceeding typically use their real names in filings and the initials of any children mentioned in the filings even though the children are easily identifiable. *See, e.g., In re Marriage of Frazier,* 1 N.W.3d 775, 778 (Iowa 2024) ("Mary Streicher and Shannon Frazier became parents to L.F. in 2011 and O.F. in 2013 before divorcing in 2014."). We thus reject the Does' argument that the rules of electronic procedure require the use of fictitious names to protect the identity of Minor Doe.

Having concluded that neither "never" nor "always" is the right answer to the question presented, we address the question of when filing under a fictitious name is allowed. Only two cases in Iowa have directly addressed the question presented in this case. In *Riniker v. Wilson,* 623 N.W.2d 220 (Iowa Ct. App. 2000), the court of appeals stated, "Iowa law does not specifically provide for 'Jane Doe' plaintiff petitions," but the court noted that "Iowa Courts have allowed, without comment, the use of 'Jane Doe' pleadings." *Id.* at 226. The court then noted, "A few courts have taken the hard line approach that anonymity is never

allowed . . . . The majority of courts, however, have entered into a delicate balancing of the plaintiffs' privacy interests, the defendants' right to exoneration, and the public's right of access to trials and court records." *Id.* at 226–27 (quoting Adam A. Miliani, *Doe v. Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort*, 41 Wayne L. Rev. 1659, 1677–78 (1995)). And, while the court found the enactment of a balancing test "persuasive," it declined to impose such a rule. *Id.* at 227. Instead, it wrote, "No procedure exists for the filing of 'Jane Doe' petitions in Iowa, and we defer to the legislature and/or our supreme court to make such rules." *Id.*

In a recent unpublished decision, the court of appeals also permitted a party to proceed under a pseudonym. *See Doe v. Gill*, No. 18–0504, 2019 WL 478518, at *3 (Iowa Ct. App. Feb. 6, 2019). In *Doe v. Gill*, two plaintiffs claimed their names were protected after they tested positive for HIV because the Iowa Code statutorily protects the confidential nature of an HIV diagnosis. *Id.* at *2. The district court allowed John and James Doe to proceed anonymously because their HIV status was protected information that could not be disclosed in court documents, and revelation of their name would be akin to doing so. *See id.* at *3. This case is of little value here because, unlike in the present matter, there was a statutory provision that permitted confidentiality. *See id.* at *2–3.

This issue has been addressed numerous times in federal precedents. In federal courts, the use of fictitious names is disfavored. "The use of fictitious names runs afoul of the public's First Amendment interest in public proceedings and their common law right of access thereto. Proceedings are only truly public when the public knows the identities of the litigants." *Cajune v. Ind. Sch. Dist. 194*, 105 F.4th 1070, 1076 (8th Cir. 2024); *see also Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189 (2d. Cir. 2008) ("Certainly, '[i]dentifying the

parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.'" (alteration in original) (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997))).

Despite being disfavored, most circuits have nonetheless concluded that the use of fictitious names is permissible and have adopted a balancing test to determine when parties can proceed under a fictitious name. *See, e.g., Cajune*, 105 F.4th at 1077 ("[W]e join our sister circuits and hold that a party may proceed under a fictitious name only in those limited circumstances where the party's need for anonymity outweighs countervailing interests in full disclosure."). Relevant factors to consider typically include whether the party seeking anonymity is challenging government activity, whether identification of the party would threaten revelation of sensitive and highly personal information, the risk of prosecution, the risk of retaliation, fundamental unfairness to the defendant, the public interest, and the existence of alternative options. *Id.* (citing *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (per curiam); *Sealed Plaintiff*, 537 F.3d at 188–90; *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)). These considerations are not exclusive. *See* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1366 (2022).

Under federal law, even when no party objects to an anonymous pleading, "the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *City of Chicago*, 360 F.3d at 669–70 (quoting *Blue Cross & Blue Shield*, 112 F.3d at 872). "Because a district court must exercise discretion

in the course of weighing competing interests, . . . an abuse of discretion standard of review is appropriate." *Cajune*, 105 F.4th at 1078. "Under this deferential standard of review, we must affirm the district court's ruling unless the district court failed to consider a factor that should have been given significant weight, considered an improper factor, or committed a clear error of judgment in the course of weighing proper factors." *Id.*

We agree with these persuasive precedents and hold that there is a presumption against allowing a party to proceed under a fictitious name and that a party may proceed "under a fictitious name only in those limited circumstances where the party's need for anonymity outweighs countervailing interests in full disclosure." *Id.* at 1077. A party seeking to file under a pseudonym should do so on motion and bears the burden of establishing that the need for anonymity outweighs the countervailing interests. *See id.* We need not identify all of the factors relevant to this determination at this point in time because the plaintiffs have not even made a threshold showing that there is a need for anonymity here. The record demonstrates that the plaintiffs and defendants were in communication prior to the filing of this suit and that the defendants already knew the identity of the plaintiffs, including the identity of Minor Doe. In addition, the plaintiffs have not, on this record, identified any serious threat or irregularity that would require anonymity. On remand, the plaintiffs shall be afforded an opportunity to amend their pleadings and use their real names in accordance with the Iowa Rules of Civil Procedure and Iowa Rules of Electronic Procedure. The plaintiffs shall use Minor Doe's initials rather than identifying her by name.

IV.

We end with the plaintiffs' claim for breach of fiduciary duty, and we affirm the district court's dismissal of that claim. Generally, a fiduciary relation "arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of another." *Weltzin v. Cobank, ACB*, 633 N.W.2d 290, 294 (Iowa 2001) (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695–96 (Iowa 1986)). Relevant factors in determining whether a fiduciary relationship exists include "the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another." *Albaugh v. The Reserve*, 930 N.W.2d 676, 686 (Iowa 2019) (quoting *Weltzin*, 633 N.W.2d at 294).

The petition avers the defendants had a fiduciary duty "to care for [Minor Doe's] wellbeing while she was on school grounds," "provid[e] a safe and secure learning environment," and "investigat[e] and ascertain[] any potential harm." The Does believe the fiduciary duty arises because of the existence of an *in loco parentis* relationship between the defendants and Minor Doe while she attends school. However, the *in loco parentis* relationship does not establish a fiduciary duty; instead, it imposes a duty of ordinary care for the purposes of negligence. In *Franchi v. New Hampton School*, 656 F. Supp. 2d 252 (D.N.H. 2009), the court emphasized this point after a plaintiff sued a private boarding school for breach of fiduciary duty after it allegedly discharged the plaintiff's daughter as a student when she began to seriously suffer from an eating disorder. *Id.* at 255–56. The

school filed a motion to dismiss, arguing the claim failed as a matter of law. *Id.* at 261–62. In granting the school's motion, the court applied the *in loco parentis* doctrine. *Id.* at 263. It held that as a matter of law the nature of the duty the school owed to the student "was a duty of care arising out of [the school's] in loco parentis status" rather than a "fiduciary duty arising from any 'unique relationship.'" *Id.* As such, the court declined to find the school owed a fiduciary duty to the student. *Id.* at 265.

Similarly, we conclude as a matter of law that there is no fiduciary relationship between these defendants—the Western Dubuque Community School District, Jessica Pape (the school board president), Dan Butler (the school district superintendent), and Scott Firzlaff (the Drexler Middle School principal)—and the plaintiffs. While schools, school officials, and teachers have a duty to exercise reasonable care with respect to students, they do not generally have fiduciary relationships with students. *See Stotts v. Eveleth*, 688 N.W.2d 803, 811 (Iowa 2004) (finding no fiduciary relationship existed as a matter of law between a high school student and junior high teacher "based on a teacher's general duty to act in the best interest of a student"); *Lindemulder v. Davis Cnty. Cmty. Sch. Dist.*, No. 15–0067, 2016 WL 1679835, at *6–7 (Iowa Ct. App. Apr. 27, 2016) (affirming the grant of a motion for summary judgment for a school district when "there was no evidence [the student] had a special relationship with any of the administration in the School District"); *see also Brummell v. Talbor Cnty. Bd. of Ed.*, No. RDB-22-1601, 2023 WL 2537438, at *8 (D. Md. Mar. 16, 2023) (stating that no court in Maryland has extended a school's *in loco parentis* status "to encompass fiduciary responsibilities"); *Doe v. Ind. Sch. Dist. 31*, No. 20-cv-226 (SRN/LIB), 2020 WL 4735503, at *5 n.2 (D. Minn. Aug. 14, 2020) ("Plaintiffs fail to cite to any authority for the proposition that taxpayer-funded

public schools have a similar fiduciary relationship with their students."); *K.R.S. v. Bedford Cmty. Sch. Dist.*, 109 F. Supp. 3d 1060, 1080 (S.D. Iowa 2015) (holding that a school nurse did not have a fiduciary duty "to provide a safe and nurturing educational environment" to a student); *Thomas v. Bd. of Ed. of Brandywine Sch. Sch. Dist.*, 759 F. Supp. 2d 477, 503 (D. Del. 2010) ("Plaintiff provides no basis for predicting that the Delaware Supreme Court would accept Plaintiff's invitation to be the first state to recognize a fiduciary relationship between a public school district and its students."); *Doe v. City of Belen Sch. Dist.*, No. CIV 00-163 BB/LFG, 2000 WL 36739615, at *7 (D.N.M. Aug. 10, 2000) ("The courts, however, continue to reject the fiduciary label in the student–teacher context."); *Chambers v. City of Middletown*, No. MMXCV146011312, 2015 WL 544906, at *4 (Conn. Super. Ct. Jan. 21, 2015) ("[T]here is nothing pleaded in the operative complaint that would convince this court that the relationship between the guidance counselor and the plaintiff should be elevated beyond that of a general student–teacher relationship.").

V.

For these reasons, we reverse the district court's dismissal of the plaintiffs' negligence and consortium claims, and we affirm the district court's dismissal of the plaintiffs' claims for breach of fiduciary duty.

**Affirmed in Part, Reversed in Part, and Case Remanded.**